New trial to be granted.

—◦•◦—

## The New-York Firemen Insurance Company *against* Ely and Parsons.

A corporation has only such rights and powers as are expressly granted, or as are necessary to carry into effect the rights and powers so granted.

Thus, a corporation cannot contract, unless the charter of incorporation enables it to contract; and in that case, it is restricted to the *mode* and *subject matter* prescribed.

In 1810, the legislature of *New-York* passed an act, on the application of the firemen of the city of *New-York,* incorporating them and their associates, by the name of *The New-York Firemen Insurance Company.* From the preamble of this act, it appeared, that the object of the petitioners in their application, and of the legislature in granting it, was *insurance;* and in the body of the act, this was declared to be the *sole purpose* of the grant. In the first section, the legislature conferred the power of contracting relative to the purposes and business for which the corporation was created. By subsequent provisions, the corporation was authorized to make contracts of insurance against fire and marine insurance; to purchase real estate, to a limited amount, necessary for the use of the corporation and the accommodation of its officers and servants in the transaction of its business; to hold real estate and chattels real, mortgaged or pledged for the payment of the capital stock, or for debts due the corporation; to purchase, on sales made by virtue of a judgment at law, or a decree or order of a court of equity, and otherwise to take, real estate, in satisfaction of debts due the corporation, and to hold such real estate until it could be conveniently sold; to purchase stock of the *United States,* or of either of the states, as an investment of capital, or to receive it as security for the payment of stock or of debts due the corporation. It was then provided, that the corporation should not be concerned in any trade or other business, except the insurance of property against loss by fire and marine insurance. In *February,* 1818, the stockholders, having determined, in consequence of losses, to

close their business, and open a new subscription for stock, obtained from the legislature an act, constituting the subscribers of the new stock, a corporation, under the former corporate name, with power to contract relative to the purposes, objects and business of the corporation; to make contracts of insurance against fire and of marine insurance; to loan money on bottomry, *respondentia* or mortgage of real estate or chattels real; to have the liquidation and settlement of the business and concerns of the original stockholders and stock, and, after the extinguishment of all claims, to distribute the residue to such stockholders; and generally, to exercise all the powers and authorities vested in the former corporation, not inconsistent with the provisions of the new act. It was, however, provided, that nothing in the new act contained, should, in any way, be construed to grant banking powers. In an action, brought by the latter corporation, on a promissory note, discounted after the acceptance of the new charter, in part payment of a former note, received by way of discount, as security for money loaned, by the first corporation, it was held, 1. that the power of loaning money, on the discount of notes, was not expresly granted to the old or new corporation, nor was it necessary to carry into effect any power so granted; 2. that such power, by the grant of other specific powers, was impliedly prohibited; and 3. that such power, by the clause excluding banking powers, was expressly prohibited; consequently, that the plaintiffs could not recover.

*Fairfield,*
*June,*
*1825.*

N. Y. F. In. Co.
*v.*
Ely.

This was an action of *assumpsit* against the defendants as indorsers of a promissory note, made by *Sturges & Sherman,* for 3,450 dollars, dated in the city of *New-York, July* 6th, 1819, payable to the order of the defendants, ninety days after date. The declaration stated, that the plaintiffs were a company, duly incorporated, by the laws of the state of *New-York,* and authorized to sue and be sued, implead and be impleaded, by their corporate name.

The cause was tried at *Fairfield, December* term, 1822, before *Chapman,* J.

On the 2nd of *March,* 1810, the legislature of the state of *New-York* passed an act, entitled "An act to incorporate the Firemen of *New-York* as an insurance company."

The preamble of this act stated, that *Willet Coles* and others, firemen and inhabitants of the city of *New-York,* had associated themselves as a company, for the laudable and beneficial purpose of insuring buildings and personal property from loss or damage by fire, and also for marine insurance; and that, by their petition presented to the legislature, they prayed to be incorporated, the better to enable them to carry into effect the salutary object of their association.

By the first section, the petitioners and their associates were constituted and declared to be a body corporate and politic, by the name of *The New-York Firemen Insurance Company;* with the power and capacity of suing and being sued, pleading and being impleaded, defending and being defended and being an-

*Fairfield,*
June,
1825.

N. Y. F. In. Co.
*v.*
Ely.

swered unto, in all courts whatsoever; and also of contracting and being contracted with, relative to the purposes and business for which the corporation was created, as thereafter declared.

By the second soction, it was enacted and declared, that the corporation was created for the sole purpose, and should have power and authority to make contracts of insurance with any person or persons, body politic or corporate, against losses by fire of any houses or buildings whatsoever, as also marine insurance, for such time, premium or consideration as should be agreed on.

The third, fourth and fifth sections provided for the subscription and payment of the capital stock.

The sixth section gave the corporation power to purchase and hold such and so much real estate as should be necessary and convenient for the use of the corporation, its officers and servants for transacting its business, and the accommodation of the persons employed therein, not exceeding in value 40,000 dollars; also to receive and hold, as mortgage, any real estate, or chattels real, *bona fide* mortgaged or pledged to the corporation, either to secure the payment of the shares to be subscribed to make up the capital stock, or to secure the payment of any debt, which might become due to the corporation; also to purchase, on sales made by virtue of a judgment at law, or decree of a court of equity, or otherwise to receive and take, any real estate in payment or towards satisfaction of any debt due the corporation; and to hold such real estate until they could conveniently sell and convert it into money, or other personal property.

The provisions of the seventh, eighth and ninth sections related to the choice of directors, prescribing their number, qualifications and duties; the appointment of a president, &c.

The tenth section provided for the appointment and compensation of a secretary, and other officers and servants. It also authorized the president and directors to make by-laws for the better management and government of the concerns of the corporation, subject to the usual restrictions; also to declare dividends of profits.

The eleventh section provided against a dissolution of the corporation, on account of an omission to hold the annual meeting for the election of officers at the time prescribed.

The provisions of the twelfth, thirteenth and fourteenth sections related to policies of insurance.

The fifteenth section made provision for the first organization of the company.

The sixteenth section was as follows: "The corporation hereby created shall not be concerned in any trade or other business, except the insurance of property against loss or damage by fire, and marine insurance: provided, that it shall be lawful for them to purchase any stock created under the authority or laws of the *United States*, or either of the said states, for the purpose of investing its capital, or any part thereof, therein; or take a transfer of any such stock as security for the payment of shares subscribed, or for any debts due to the said corporation, either before or after they shall have commenced their business, and to sell or transfer the same again."

The seventeenth section declared, that the act of incorporation should be deemed a public act, and be liberally construed to effect the ends and purposes thereby intended; and the eighteenth and last section limited the duration of the corporation to fifteen years.

On the 27th of *February*, 1818, the legislature of *New-York* passed another act, entitled "An act concerning *The New-York Firemen Insurance Company ;*" the preamble of which contained the following recital: That it had been represented to the legislature, by and on behalf of *The New-York Firemen Insurance Company*, that the capital stock of said corporation having been greatly reduced by losses, the directors, with the consent and approbation of nearly all the stockholders, had come to the determination to cease making insurance upon the capital stock, and to close and wind up the business and concerns in relation thereto; that a subscription should be opened for the sum of 500,000 dollars; and that the stockholders thereof, should, at the future election to be held, only choose directors of the company, who should have the power of adjusting and settling the concerns of the original subscription, and dividing among the holders of said stock the balance that might remain after all its engagements should be settled; and that a subscription of 500,000 dollars, divided into shares of twenty-five dollars each, had been subscribed and paid, or secured to be paid, by stockholders of the said corporation and others.

By the first section, it was provided, that the business, concerns and operations of the said corporation, so far as related to the original stock and stockholders, should be closed and discontinued; and that the estate, funds and effects thereof, after the payment of all the debts, and the extinguishment of all the

*Fairfield,*
June,
1825.

N. Y. F. In. Co.
*v.*
Ely.

engagements of the said corporation, made and entered into during its operations on the original capital stock, should be distributed among the said stockholders according to their rights therein ; and that the said stockholders should cease to be stockholders of the said corporation in respect to its operations and concerns since the first day of *January*, 1818, unless they should become stockholders of the new capital stock.

The second section enacted and declared, that the subscribers to and stockholders in the new subscribed capital stock of 500,000 dollars, should be and continue a body corporate and politic, by the name of *The New-York Firemen Insurance Company*, with the same general powers as had been conferred, by the first section of the former act, until the 2nd day of *March*, 1833.

By the third section, it was provided, that the corporation should have power to make contracts of insurance with any person or persons, body politic or corporate, against loss or damage by fire of or to any houses or buildings, or goods or chattels; and also to make all kinds of marine insurance, and to loan money on bottomry, *respondentia* or mortgage of real estate and chattels real; and generally to do and perform all matters and things relating to the said objects ; and should and might have and exercise all the powers and authorities, which were by law vested in said corporation ; provided, that nothing in this act contained should in any way be construed to grant banking powers.

The fourth section provided merely for the continuance in office of the president and directors under the former act until a new election.

By the fifth section, it was provided, that the directors of said corporation and their successors in office, should have the charge, management, liquidation and settlement of the business and concerns of the original stockholders and stock of said corporation relating thereto ; and should keep separate accounts of what related to such business and affairs ; and after payment of all debts and extinguishment of all contracts and engagements of said corporation on that account, out of the funds and effects belonging thereto, should pay over the residue to the original stockholders or their representatives, in proportion to their respective interests.

The sixth section continued in force, in relation to the new corporation, all the provisions of the former act not inconsistent with the provisions of this.

The seventh and last section declared this to be a public act, which was to be liberally construed to effect the ends and purposes thereby intended.

The plaintiffs kept an office in the city of *New-York*, at which the note in suit, with sundry other notes, had been discounted, by them, on the day of its date, in part payment of another note previously discounted, which originated in a loan of money, made by the company, to *Sturges & Sherman*, on the discount of their note, some time before the alteration of the charter in the month of *February*, 1818. When the note in suit was discounted, the plaintiffs deducted therefrom a sum equal to seven *per cent. per annum*, being the lawful interest from the time of making the note to the time of payment, including the usual days of grace. The computation of interest was made by allowing 30 days to one month, and 360 days to one year ; such being the mode of computing interest, adopted by all the banks and by the merchants in the city of *New-York*. The defendants claimed, that the plaintiffs could not recover ; first, because by the charter of the company, and the laws of the state of *New-York*, the plaintiffs were prohibited from loaning the money and receiving the note in question ; and secondly, because such note was usurious, according to the laws of that state ; (*a*) and they prayed the judge so to instruct the jury.

The judge, in his charge to the jury, expressed an opinion against the claim of the defendants, on both these points ; and the plaintiffs had a verdict. The defendants moved for a new trial for a mis-direction.

*Daggett* and *Sherman*, in support of the motion, after some preliminary remarks upon the nature of a corporation generally, considering it as being strictly a creature of the legislature, possessing such powers only as are either expressly granted, or necessary to carry into effect the powers so granted, contended, 1. That the plaintiffs were not only not authorized, but were prohibited, by virtue of the acts of incorporation, to loan money on the discount of notes.

2. That the exercise of this power was prohibited, by *the act to restrain unincorporated banking associations*, passed *April*,

(*a*) By consent of parties and permission of the court, the charter of incorporation, and the laws of *New-York* in relation to the business of the company, and prohibiting usury, were read in evidence from the printed statutes of that state, and were made part of the case.

*Fairfield,*
*June,*
*1825.*

N. Y. F. In. Co.
*v.*
Ely.

11th, 1804, re-enacted, *April* 6th, 1813. *The People v. The Utica Insurance Company,* 15 *Johns. Rep.* 358.

3. That the note in question was usurious : First, because the interest was taken by way of discount, and was more than at the rate of seven *per cent. per annum* on the amount actually loaned ; secondly, because interest was computed at the rate of seven *per cent.* for 360 days, which was, of course, more than at the rate of seven *per cent. per annum.*

*N. Smith* and *Bissell,* contra, contended, 1. That the plaintiffs had right to take the note in suit. First, the company were not prohibited, by the charter of incorporation under which they acted, from loaning their funds. Secondly, from the powers expressly delegated, others are implied, which are necessary to render those conferred efficacious. Now, it is absolutely necessary to the business of the company, that a part of their capital should be floating, and that in the form most convenient to meet losses and pay current expenses. But what form is so convenient as that of negotiable notes and bills of exchange, by the discount of which money may immediately be raised ? Thirdly, the note in question belongs to the old company, and was given to the plaintiffs as their *trustees.* These trustees are authorized to wind up the concerns of the company, pay their debts and distribute the surplus. This, then, is a note given to these trustees, for a debt antecedently due, and, after the expiration of the charter. The plaintiffs have all the rights, which natural persons, appointed trustees with similar powers, would have.

2. That admitting that the company had no authority, under their charter, to loan money, or discount notes, it does not follow, that the note in suit is void. The charter may be forfeited ; but can the defendants avoid *their contract,* on the ground that the company have transcended their powers ? The legislature have annexed no such forfeiture to this offence.

3. That this case was not within the provisions of the statute called *the restraining act ;* the object of which was, to prevent the establishment of any *bank without charter.*

4. That the note was not usurious, either because the interest was received at the time of the loan, or because thirty days were reckoned a month.

*Fairfield.*
June,
1825.

N. Y. F. In. Co.
*v.*
Ely.

Hosmer, Ch. J.   In the opinion now to be expressed, a recurrence to the questions of usury, (*b*) and the law of *New-York*, denominated "the restraining act," is unnecessary.

I have come, most satisfactorily, to the result, that the note in question is void, for deficiency of right in the plaintiffs, as well as in the former corporation, to loan money on the discount of notes.

The plaintiffs are a corporation, created by the legislature of *New-York*.   As early as the year 1810, a number of persons were incorporated as an insurance company;  and afterwards, in the year 1818, their charter was surrendered, and a new one was granted to the plaintiffs, comprising the powers of the first incorporation, with the addition of certain other powers specified.   At present, I state the facts in this general manner;  as I shall have occasion to examine the provisions of both charters, particularly, so far as they bear on the question now to be discussed.

To the maintenance of the present action the defendants object, that the plaintiffs were not empowered to loan money on the discount of notes;  and that the note in suit was for a loan of this description.   The fact is admitted;  but by the plaintiffs it is insisted, that they had a legal right to lend money, and take the note in payment.

The note in suit was discounted after the acceptance of the new charter, in part payment of an antecedent note received on discount for the loan of money, by the first corporation.

Whether the plaintiffs had right, by their charter, to discount the note in suit, is the specific question to be determined.   They have acted in the capacity of a corporation;  and the validity of their act must be tested, by the powers, which the incorporation conferred.

It has been claimed, that every thing not prohibited by the charter of incorporation, is left free;  and that concerning the disposition of its funds, a corporation, as if it were an individual, may loan money, and take any security, except so far as it is expressly limited and restrained.   The analogy supposed does not exist;  and the capacity of the corporation has been entirely misconceived.

---

(*b*) In consultation, *Peters*, *Chapman*, and *Bristol*, Js. expressed a clear opinion, that the note in suit was not usurious.  *Hosmer*, Ch. J. was decidedly of opinion that it was usurious;  to which *Brainard*, J. assented.  As it ultimately became unnecessary to decide this point, in order to a final disposition of the case, neither of the Judges expressed any opinion upon it in public.

*Fairfield*,
June,
1825.

N.Y.F.In.Co.
*v.*
Ely.

An individual has an absolute right freely to use, enjoy and dispose of all his acquisitions, without any controul or domination, save only by the laws of the land. But the civil rights of a corporation (for it has no natural rights) are widely different. The law of its nature, or its birth-right, in the most comprehensive sense, is such, and such only, as its charter confers. These principles were advanced, by Chief Justice *Marshall*, with his usual precision, in the case of *Head* and *Amory* v. The *Providence Insurance Company*, 2 *Cranch* 127. "It is a general rule," said that learned jurist, (*p.* 166.) "that a corporation can act only in the manner prescribed by law." "An individual has an original capacity to contract, and bind himself in such manner as he pleases." *P.* 168. "The act of incorporation is to them (*i. e.* the corporation) an *enabling* act; it gives them all the power they possess; it enables them to contract; and when it prescribes to them a mode of contracting, they must observe that mode, or the instrument no more creates a contract, than if the body had never been incorporated." *P.* 169. If a corporate body is thus limited to the mode of contracting, which is often unessential, *a fortiori* is it restrained to the subject matter, as to the sphere within which it is to move. In the case of *The People* v. *The Utica Insurance Company*, 15 *Johns. Rep.* 383., when speaking of a corporation for a specific object, it was said, by Chief Justice *Thompson*, that "such an incorporated company have no rights, except such as are specially granted, and those that are necessary to carry into effect the powers so granted." The principle has often been recognized. *Broughton* v. *Manchester Water-Works Company*, 3 *Barn. & Ald.* 1. *Slark* v. *Highgate Archway Company*, 5 *Taun.* 792. It results as an unquestionable corollary from the principles before stated.

By the test of this rule, I will examine the charter, under which the plaintiffs derive their capacity, and shall endeavour to maintain the following propositions. 1. The right of loaning money on the discount of notes, was not *expressly* granted to the old or new corporation; nor was it necessary to carry into effect any delegated power. 2. The power of loaning money on discount, was, by the charter, *impliedly* prohibited. 3. The power in question was prohibited *expressly*.

I am fully aware, that these several propositions concentrate in one, *viz.* that the plaintiffs had no right to loan money on discount; but these distinct modes of discussion, if I am not

mistaken, will, with additional clearness, conduct the mind to the correct result.

*Fairfield,*
June,
1825.

N. Y. F. In. Co.
*v.*
Ely.

1. The right of loaning money on the discount of notes, was not expressly or impliedly granted. The charter of 1810 commences with a recital, that certain persons had associated themselves as a company for the laudable and beneficial purpose of insuring buildings and personal property from loss or damage by fire, and also for marine insurance; and that they had petitioned to be incorporated "the better to enable them to carry into effect the salutary purpose of their association." The object of the company is here fully displayed; and although the preamble of a law does not controul the enacting clause, expressed in clear and unambiguous terms, yet if any doubt arises, it may be resorted to, for the purpose of explanation, and to shew the legislative intent. The unequivocal object, then, of the application for a charter, and of the legislature in granting it, was *insurance.*

After having incorporated the applicants, the legislature proceed, in the second section, to define the powers of the corporation. They declare, that it is created for the *sole purpose* of making contracts of insurance. This is explicitly asserted to have been the object of the grant; and to effectuate this object exclusively, the most plain and unequivocal words are employed. It will not be pretended, that the power of loaning money on discount, is granted in the section reviewed; or that it is necessary to effectuate the business of insurance. If, then, the right of loaning money exists, it must be found in some subsequent section of the act.

By the sixth section, the company is enabled to hold real estate, to receive mortgages and pledges to secure the payment of the shares in the capital stock, and likewise of any other debt due to the corporation. They, also, are empowered to purchase, on sales made by virtue of a judgment at law, or decree or order of a court of equity, or otherwise to receive and take any real estate, in payment of any of their debts.

By the sixteenth section, the corporation is empowered to purchase stock of the *United States,* for the purpose of investing therein its capital, or any part thereof, and to receive transfers of such stock as security for the payment of shares subscribed, or for any debts due to them, after they shall have commenced the business of insurance.

These are all the powers conferred by the first charter.

which can be considered as bearing, even in the slightest degree, on the subject of discussion.

In *February*, 1818, the capital stock being greatly reduced by losses, the stockholders ceased making any further assurance, and determined to close and wind up their business. They likewise consented, that a new subscription should be opened, and that the stockholders thereof should only choose directors, who should have the power of adjusting and settling the concerns of the original subscription, and dividing among the holders of the stock the balance remaining after all its engagements should be paid. Conformably to this agreement, a new subscription was had; and the legislature, by act of the 27th of *February*, 1818, having recited the doings of the old stockholders, incorporated the subscribers of the new stock under the former corporate name. They likewise declared, that the first corporation, so far as related to the original stock and stockholders, should be closed and discontinued; and that the funds, estate and effects thereof, after the extinguishment of all claims against it, should be discontinued among the stockholders. It was further enacted, that the stockholders of the first corporation, in respect to its operations and concerns, since the 1st of *January*, 1818, should cease to be such, unless they should become stockholders of the new capital stock.

By the third section of the act, the new corporation was empowered to make contracts of insurance against fire, and of marine insurance, and to loan money on bottomry, *respondentia* or mortgage of real estate and chattels real; and, likewise, to exercise all the powers and authorities vested in the first corporation. To this section the legislature, out of abundant caution, subjoined a provision, "that nothing in this act contained should, in any way, be construed to grant banking powers."

The fifth section of the act provides, that the directors of the last corporation shall have the charge, management, liquidation and settlement of the business and concerns of the original stockholders and stock of the corporation, and shall keep separate accounts thereof; and after the payment and extinguishment of all the debts and engagements of the corporation out of the estate and funds belonging thereto, that the residue shall be distributed among the original stockholders. And by the sixth section, the new corporation is invested with all the powers conferred on the former, except so far as they are inconsistent with the provisions of the law of 1818.

Having thus referred particularly to all the powers of con-

tracting contained in both charters, I now enquire, whether the right of loaning money on discount of notes, was expressly granted by either? No person has pretended it; no one will hazard the assertion. Both the charters are profoundly silent on this subject.

I next enquire, whether loans on discount of notes were necessary to carry into effect either of the powers granted? If there be any pretence of this, let the power be specified. The powers granted I will particularize. They are—to make marine insurances and insurances against fire; to hold real estate for the use of the corporation; to receive mortgages and pledges for security of the capital stock, and of debts due the corporation; to purchase on sales made by virtue of a judgment at law, or a decree or order of a court of equity, and to take any real estate in payment of their debts; to purchase stock of the *United States,* for the purpose of investing therein the capital of the company, and to receive transfers of such stock as security for the payment of shares subscribed, or for any debts due to them; to loan money on bottomry, *respondentia* or mortgage of real estate and chattels real; and to have the liquidation and settlement of the business and concerns of the original stockholders and stock, and after the extinguishment of all claims, to distribute the residue to such stockholders. Having thus concentrated all the contracting powers of both corporations, and brought them within a single glance of the eye, I repeat the enquiry, which of them, for its effectuation, required the power of loaning money on discount of notes? Every mind, possessing no more perspicacity than mine, will promptly answer, *none.*

In the case of *The People* v. *The Utica Insurance Company,* 15 *Johns. Rep.* 358. it was adjudged, that the surplus funds of the corporation might be loaned; but betwen that case and this there is no analogy. The *Utica Insurance Company,* by their charter, were permitted to loan money, by authority given to them to make investment of their funds, which the business of insurance might not actively employ, except so far as they were prohibited; and no total prohibition of this nature existed.

It is not questioned, that the corporation was empowered, by charter, to secure, by mortgage, debts due to them in any manner whatever; but this remark is inapplicable to the present case. The object of the authorized security, is *debts;* and the mode of security is, *by mortgage.* Here there was no debt

*Fairfield,*
June,
1825.

N. Y. F. In. Co.
*v.*
Ely.

to be secured ; and no mortgage, but merely a promisory note.

The directors under the act of 1818, it has been said, were made *trustees* of the old corporation, *with unlimited power*. A more gratuitous assertion could not be made. It is in hostility both with the words and the object of the section alluded to. Their power was defined and specific. They were to liquidate and settle the business and concerns of the first corporation, and after the extinguishment of all the demands against them, to pay the balance to the original stockholders. They had no authority, expressly or by implication, to continue the business of the first corporation a moment. The sole object of the power was to terminate, in the shortest time possible, the concerns of the old corporation, which had ceased to exist. Their authority may, strictly, be compared to that of *administrators*. They were to settle the estate of the deceased, and pay over the surplus.

It has been contended, that the corporation was authorized to invest its funds, in any way not prohibited by the charter. This is an inversion of the unquestionable principle, that such an incorporated company has no rights, except such as are specifically granted, or necessarily implied ; and directly contravenes the undeniable position, that the act of incorporation is an *enabling* act ; the law of its nature ; giving it all the powers it possesses.

In conclusion on this head of argument, I am clear, that the plaintiffs had no right to loan money on discount of the note in question.

2. The loaning of money on the discount of notes, was, by the charter, *impliedly* prohibited.

In addition to the power of insurance, the great object of the incorporation, a number of distinct powers were conferred, embracing every subject supposed to be connected with the interest of the company.

It is a sound principle, that the specific grant of certain powers, is an implied prohibition of other and distinct powers. 15 *Johns. Rep.* 383. 2 *Cowen's Rep.* 699. It is never to be assumed, that unnecessary provisions were made ; and hence they are enacted, because the corporation otherwise would not have been invested with the powers granted. The construction of a charter, on this ground, is necessarily confined to the general and specific powers clearly conferred.

In the case under discussion, when recurrence is had to the

specific powers, they, in their *nature*, forbid the exercise of the power claimed by the plaintiffs.

The expression in the second section of the first charter, that the incorporation was for the *sole purpose* of making insurance, clearly implies, that it was not for the loan of money, unless such power should be specifically imparted.

By the sixteenth section, the express delegation of power to invest the capital in stock of the *United States*, is attended with the necessary implication, that the corporation had not this power, by the general grant to make insurance. But the power would have existed, on the same principle, that the corporation had the right of loaning money, not specially imparted.

The third section of the charter supplies the most irrefutable presumption against the right asserted. The corporation was expressly authorized, by this section, to loan money on bottomry, *respondentia* or mortgage of real estate. Had they this power antecedently? If so, why was it specifically conferred? It is unquestionable, that the power just mentioned did not exist, and would not have existed, unless it were specially granted. But if the right to loan was vested in the corporation, then the delegated power was unnecessary, and even noxious, in contributing to impart a construction to the charter. But it was not antecedently granted. The special power was not restrictive of a prior right, but the delegation of authority not before existing.

Lastly, the loaning of the funds of the corporation, except so far as it is authorized, is *expressly* prohibited.

In the sixteenth section of the first charter, it is declared, that the corporation shall not be concerned in trade or *other business*, except the insurance of property ; provided that stock may be purchased for the investment of their capital. Is the loaning of money on discount *a business* ? Who can doubt it ? Then it is expressly prohibited.

Immediately after conferring the power to loan money on bottomry, *respondentia* and mortgage, by the third section, it is provided, that nothing in this act contained, shall, in any way, be construed to grant *banking powers*. The discount of money on a note, is, peculiarly, of this description ; and though not the only, yet it is the most important power of a bank. 15 *Johns. Rep.* 390. 9 *Mass. Rep.* 54. 2 *Cowen's Rep.* 710. Then it is forbidden expressly, and precisely in a connexion, which demonstrates the solicitude of the legislature on this subject. The power of loaning on certain prescribed security, having been

granted, it, not improbably, was apprehended, that this would be a pretext for loaning money on discount. Hence the provision inhibiting the constructive grant of a banking power, and meeting, in direct opposition, the proceeding of the plaintiffs now in question. The prohibition is total and exclusive. It did not intend merely to forbid the ordinary and habitual loan of the corporate fund; but, on the salutary principle, *obsta principiis,* to prohibit the exercise of any banking power. A construction of the charter short of this, would defeat its object, and, by permitting the use of the banking powers separately, which, from their nature, cannot be employed conjunctly, would nullify the entire provision.

It matters not whether the disposition of the funds, in a certain manner, would, or would not, be profitable to the corporation. The test of power, in this case, is not, what would be useful, but what is the grant.

On the best attention I have been able to bestow on this subject, I am clearly and irresistibly led to the conclusion, that the plaintiffs had not the power to loan money on the discount of notes; and that the note in suit is utterly void.

I would, therefore, in this case, grant a new trial.

The other Judges, *viz.* PETERS, CHAPMAN, BRAINARD and BRISTOL, Js. were of the same opinion.

New trial to be granted.