Birchard, J.
From the bill of exceptions, the determination of this question will dispose of the three assignments of error. Did the deed of John Overmyer, executed in 1839 to the Ohio Railroad Company, divest him of title to the land described in the deed ? The plaintiff in error assumes that it did not, for the alledged reason, that the corporation had no power to receive the title. At common law, corporations had the capacity to purchase and alien lands unless restrained by statute or their charters. 2 Kent’s Com. 227, and cases there cited.
Owing to the lawish manner in which corporations are granted in modern times, a safer rule has obtained. The better and true doctrine which now is generally recognized, is, that corporations have such powers only as are specifically granted by the act of incorporation, or as are necessary to carry into effect the powers expressly, granted. 2 Cranch’s Rep. 127; 15 Johns. Rep. 358; 5 Conn. Rep. 560; 12 Ohio Rep. 12.
*32 The purchase in this case was made, as is shown by the proof, for the express purpose of securing the right of way, and the timber growing on the land, which was needed in constructing the track of the road, and was actually so used. The superintendent, states that, after several ineffectual attempts to procure timber for the making of the road by purchase, he found it necessary to resort to the purchase of lands in the vicinity of the road to supply the materials for making the superstructure; and, in accordance with that view, the company made the purchase of the land in question.
■ We look, then, to the charter of this company (O. L. vol. xxiv, 320) in order to determine whether the deed of 1839 is void. The 3d section confers the power of “ purchasing, hold- £ ing, selling, leasing, and conveying estates, real, personal and £ mixed, so far as the same shall bo necessary for the purposes £ hereinafter mentioned, and no further;” ££ and they shall have, £ enjoy and exercise all the powers, rights and privileges, which £ corporate bodies may lawfully do, for the purposes mentioned £ in this act.” The purposes referred to are declared, in the subsequent sections of the act, among other things, the building of a railroad not exceeding one hundred feet in width.
The ,12th section gives the right ££to enter, use and excavate £ any lands which may be wanted for the site of the road, or for £ any other purpose necessary and useful for the construction £ and repair of said road and its works.”
Section 13 contains a paragraph which reads thus: ££ That £ the president and directors of said company, or a majority of ‘ them, or any person authorized by them, or a majority of them, ■ £ may agree with the owner or owners of any land, earth, tim- £ her, stone or other materials, or any improvements which may ‘ be wanted for the construction or repairs of said road, or any £ of their works, for the purchase, use or occupation of the £ same.”
In view of these grants of power, it would seem that the purchase in question was expressly authorized by the charter. Timber was needed for the construction of the road, and power *33 was intended to be granted so ample, that it might be procured at all events. The first, and preferred mode of procuring it, was by purchase, upon mutual agreement with the owner; and it is evident from the whole scope of the charter, that the Legislature preferred that the company should make the necessary acquisitions of property, by purchase, to a resort to the other means conferred upon them, to wit, the exercise of the delegated right of eminent domain. The company did just what a prudent man would have done under like circumstances, and the charter justified them, because it was the intention of the Legislature (and which intent is to be gathered from the act of incorporation) to authorize purchases of all necessaries at fair prices, and in the mode most economical, least likely to give cause of offence, and least prejudicial to the rights of others.

Judgment Affirmed.