S. L. ANDERSON ET AL. V. CLEBURNE BUILDING & LOAN ASSOCIATION.

(No. 3410.)

APPEAL from Johnson County. Opinion by WHITE, P. J.

HENRY & GREEN and M. A. OTIS, counsel for appellants.

POINDEXTER & PADELFORD, counsel for appellee.

§ **174.** *Private corporations; cannot exercise banking and discounting privileges; contract of, held ultra vires; "discount;" meaning of the word.* On the 22d day of December, 1888, the appellee, the Cleburne Building & Loan Association, instituted this suit in the county court of Johnson county, Texas, on a promissory note, against S. L. Anderson, John C. Brown, G. W. Patterson and W. J. Lightfoot, as makers of said note. The defendants S. L. Anderson, G. W. Patterson and John C. Brown answered by general demurrer, general denial, and spe-

249

cial plea of usury, and that the plaintiff, being a private corporation, under the laws of Texas had no right to make the contract for which the note sued on was given. To the special plea the plaintiff by supplemental petition demurred. February 1, 1889, cause was called for trial, the parties appeared, announced ready, and the court sustained the general demurrer of the plaintiff to the defendants' plea of *ultra vires* in said plea, to which the defendants excepted, and said cause proceeded to trial upon the remainder of said pleadings, and judgment was given for plaintiff. The defendants S. L. Anderson and John C. Brown excepted to said judgment, gave notice of appeal in open court to the court of appeals, filed appeal bond and assignment of error, and bring this case here for revision of the errors committed by the court below in sustaining plaintiff's general demurrer to defendants' plea of *ultra vires* contained in said answer.

Defendants' special plea alleges the plaintiff is a private corporation, organized under the laws of the state of Texas; that by its charter the plaintiff is not authorized to loan money to any person but its own members, or at a greater rate of interest than twelve per cent. per annum; that the money for which the note in suit was given was executed in violation of plaintiff's charter, etc., for money loaned at discount, and to a person not a member of said corporation. The defendants, to procure said loan, went to plaintiff, and, after agreeing on the amount desired by the borrower, that amount, together with the interest thereon at two per cent. per month from date of note and for the time said loan was to run, were added together, put in the note signed by defendants, and plaintiff then paid to defendant the face value of said note, less said two per cent. per month, and took a note which provided that it should draw interest from maturity at twelve per cent.

Section 16, article 16, of our state constitution declares that "no corporate body shall hereafter be created, re-

newed or extended with banking or discounting privileges." Our statute (art. 566, R. S.) expressly enumerates all and the only purposes for which private corporations may be created in Texas; and article 589, Revised Statutes, provides that "no corporation created under the provisions of this title shall employ its stock, means, assets, or other property, directly or indirectly, for any other purpose whatever than to accomplish the legitimate objects of its creation." In the transaction as set out in defendants' answer, does it appear that the Cleburne Building & Loan Association was violating these provisions of our constitution and laws? Unquestionably so, if it was exercising or attempting to exercise discounting privileges. Defendants, these appellants, went to plaintiff, appellee, to obtain money on the note sued on. Appellee discounted from the face of the note an amount equal to two per cent. per month, or the amount advanced on the note for the length of time said note was to run, gave appellants the balance, and thus acquired the note. "Discount is the difference between the price and the amount of the debt, the evidence of which is transferred. That difference represents interest charged, being at some rate according to which the price paid, if invested until the maturity or the debt, will produce its amount; and the advance, therefore, upon every note discounted, without reference to its character as business or accommodation paper, is properly denominated a loan, for interest is predicable only of loans, being the price paid for the use of money." [Bank v. Johnson, 104 U. S. 276; Macl. Bank., 43. "To discount paper, as understood in the business of banking, is only a mode of loaning money with the right to take the interest allowed by law in advance." [Bank v. Baker, 15 Ohio St. 68.] In Saltmarsh v. Bank, 14 Ala. 677, it is said: "To discount a bill is to buy it for a less sum than that which upon its face is payable." In Loan Co. v. Towner, 13 Conn. 249, it was held that, "where it was provided in the charter

of a corporation established for the purpose of loaning money that nothing therein contained should be construed to authorize the company to discount notes or exercise any banking privileges whatever," the taking of a note for the sum loaned, and the receiving of the interest on that sum in advance for the period of the loan, was thereby prohibited, and there could be no recovery on the note thus discounted. And so in Insurance Co. v. Ely, 5 Conn. 560, it was held: "A corporation has only such rights and powers as are expressly conferred by its charter, or as are necessary to carry its express rights and powers into effect. Hence it cannot contract unless it is enabled to do so by its charter, and then only in the mode and as to the subject-matter prescribed." It was further held in that case that "a corporation authorized by its charter to make contracts of fire and marine insurance, to loan on bottomry, *respondentia* or mortgage of real estate or chattels real, to buy in mortgaged property when necessary to secure debts, and generally to purchase and hold property necessary to carry on its business, but expressly prohibited from exercising banking powers, cannot loan money on the discount of notes." In the case in hand, defendants' (appellants') special plea of *ultra vires*, if sustained by the proofs, would have been a complete defense to and entirely defeated plaintiff's cause of action, or rather right of recovery. The court erred in sustaining the plaintiff's general demurrer to this answer.

June 11, 1889.                    Reversed and remanded.

ON REHEARING.

(Dec. 3, 1890.)

WHITE, P. J. When the case was reversed by us at the last Austin term the appellee had not been represented by counsel. A motion was filed, supported by an able oral argument and brief, just before the adjournment at that term, and was transferred to this branch

for want of time properly to consider and dispose of it. We have been profoundly impressed with the power and plausibility of the positions and reasoning of the learned counsel for appellee as contained in the printed brief filed in support of the motion. We have endeavored to give the questions involved that renewed consideration which their merits and importance demands, and only regret that our limited time will not permit us more than a brief statement of the propositions submitted, and our conclusions thereon from authorities considered.

In the *first* place it is substantially contended that we erred in holding that the appellee, the building and loan association, exercised banking and discounting privileges in the transaction involved in the litigation; and, *secondly*, that the doctrine of *ultra vires* could not legally be invoked in this case. It is insisted that appellant Anderson's plea as defendant below on its face fails to show the exercise of banking or discounting powers, and consequently fails to show the exercise of powers *ultra vires*. Said portion of said plea is as follows: "Defendants further aver that said corporation did on January 19, 1887, in direct, open and flagrant violation of the terms of its charter and of the constitution and laws of that state, lend to one A. B. Anderson, who was never a member of said corporation, the sum of $150, and did then and there accept and receive as security for the payment of said sum of money the note of said A. B. Anderson, with W. J. Lightfoot, John C. Brown and G. W. Patterson as securities thereon. Said note was payable twelve months after date, with interest at the rate of twelve per cent. per annum from maturity until paid, and ten per cent. attorney's fees if collected by law, etc. That said A. B. Anderson died before the maturity of the above-described note, and at the maturity thereof S. L. Anderson, a son of A. B. Anderson, received from plaintiff the said note, and thereupon he and his co-defendant executed and delivered to plaintiff the note here

sued on for no other consideration than the surrender and cancellation of said first-mentioned note. That $36 was added to the sum ($150) borrowed and received by A. B. Anderson from plaintiff, and was put into said first note; and that said sum of $36 was the interest on the $150 at the rate of two per cent. per month for twelve months, the time said note had to run. And, further, defendants charge that at the time of making and delivering by defendants to plaintiff the note here sued upon plaintiff added to said note of $186 the sum of $37.20 to get the amount of said note of $223.20, and said sum of $37.20 was obtained by calculating interest at the rate of two per cent. per month for ten months, the time the note sued upon had to run from its date.

The contention is that by the terms "discount" and "banking," as used in our constitution and laws, is meant "bank discounts." That "'bank discount' is a certain per cent. deducted from the face value of a negotiable instrument transferred to the bank, the bank paying the remainder of the face value, less the per cent. deducted, and is equal to interest paid in advance," etc. That there can be no discount unless there is deduction. That to add in the interest,— the unearned increment, so to speak,— and put it into the face of the note, and then pay for said note a sum less said interest, is an addition, and not a deduction, and consequently not a discount. Several of the authorities cited would seem to warrant this restricted meaning to the word "discount," and may be found cited by Mr. Bouvier in his Law Dictionary. Anderson, in his Dictionary of Law, defines "discount" as "the difference between what is paid for a claim evidenced by negotiable paper and the face amount thereof." We quote from the well-considered opinion of Brewer, J., now one of the justices of the supreme court of the United States. He says: "The term 'discounting' includes purchase as well as loan." "To 'discount' signifies the act of buying a bill of exchange or promissory

note for less than that which upon its face is payable."
[1 Bouv. Law Dict., tit. "Discount."] "It is also un-
deniably clear that the term 'discount,' when used in a
general sense, is equally applicable to either business or
accommodation paper, and is appropriately applied either
to loans or sales by way of discounts when a sum is
counted off or taken from the face or amount of the
paper at the time the money is advanced upon it, whether
that sum is taken for interest upon a loan or as the price
agreed upon a sale." [Bank v. Baker, 15 Ohio St. 85.
See, also, Fleckner v. Bank, 8 Wheat. 338; Pape v. Bank,
20 Kan. 440.] In our former opinion in this case we also
cited, as holding the same definition, Bank v. Johnson,
104 U. S. 276. Loaning money where the interest is
taken at the termination instead of the commencement
of the loan was held within a prohibition against dis-
counting notes. [Bank v. Benedict, 1 Hall, 556.] We
quote this authority from the note on "discount" in 5
Amer. & Eng. Enc. Law, pages 679, 680. Also in said
note we find the following, from Weckler v. Bank, 42
Md. 592: "The ordinary meaning of the term 'to dis-
count' is to take interest in advance, and in banking it is
a mode of loaning money. It is the advance of money
not due until some future period less the interest due
thereon when payable." Without further discussion
upon this branch of the case, we hold that the law when
applied to the facts set forth in defendants' plea made
the transaction a discounting one, and as such obnoxious
to our constitution and laws.

Was the contract *ultra vires;* and, if so, did this so
vitiate the whole contract as that plaintiff would not be
permitted in law to recover anything upon it; not even
the amount which had been actually paid originally in
the purchase of the first note? "The term '*ultra vires*'
is used to designate the acts of corporations beyond the
scope of their powers as defined by their charters or acts
of incorporation. [2 Bouv. Law Dict. 620.] So, whether

with strict propriety or not, the term is also used in different senses. Thus an act is said to be *ultra vires* when it is not within the scope of the powers of the corporation to perform it under any circumstances, or for any purpose. . . . When an act is *ultra vires* in this sense it is generally, if not always, void *in toto*." [2 Wait, Act. & Def., 332.] Our constitution and laws unquestionably intended that no private corporation should be created with or ever exercise banking or discounting privileges. This is the plainly expressed policy and even language of our law [Const., art. 16, § 16; Sayles' Civil St., art. 566, subd. 28], and, as if to place and emphasize this and all other matters with regard to their power and authority, it is expressly declared that ''no corporation created under the provisions of this title shall employ its stock, means, assets or other property, directly on indirectly, for any other purpose whatever than to accomplish the legitimate objects of its creation." [R. S., art. 589.] Their authority is expressly limited by the authority of their charters. To go beyond the legitimate object of their charters is *ultra vires*, and the act is void, because the law says it shall not be done. We are free to concede that in other states "there would seem to be no rule or principle recognized . . . by which an act creating a corporation for certain specific objects or to carry on a particular trade or business is to be strictly construed as prohibitory of all other dealings or transactions not coming within the exact scope of those designated." [2 Wait, Act. & Def., 333.] But this rule cannot obtain in the face of our statute (article 589), which confines their operations to the legitimate objects of their creation. If the attempted act does not come within these legitimate objects, then it is void *per se* under the statute. It follows from what we have found the law to be that the act of appellee was discounting, in contravention of law, and was, moreover, *ultra vires*.

But it is claimed that appellant is estopped from set-

ting up *ultra vires* because he is *in pari delicto*, and the law will not assist him. That he is not so estopped is decided in Insurance Co. v. Ely, 5 Conn. 560, cited in our first opinion, and Loan Co. v. Towner, 13 Conn. 249. See, also, Association v. McKnight, 35 Pa. St. 472; Moseley v. Brown, 76 Va. 419. He is not estopped by virtue of the rule announced in Daniel on Negotiable Instruments, section 386, upon the ground that the shareholders of the corporation should not suffer for breaches of trust committed by their officers, and permit parties who desire a benefit thereby to take advantage of their own wrong in borrowing from those who had no authority to lend. It is not shown that the .parties lending had no authority, and were not themselves the shareholders. "*Qui facit per alium facit per se;*" and if the lenders were the agents of these shareholders, and acting in the apparent scope of their authority, the principals are estopped to deny the authority. But, again, it is contended that no person can avail himself of the plea of *ultra vires* unless he connects himself directly with the contract which is claimed to be prohibited to the corporation. The position is that, if any illegality attached to the transaction, it occurred in connection with the purchase of the first note, and the making of the loan to A. B. Anderson, and that appellant was no party to that transaction, but simply took up that note and executed his own in lieu thereof. This position is not maintainable. In the execution of the second note — the note now in controversy — the process of discounting occurred. But we will not pursue the matter further. We are still of the opinion that our previous decision reversing the judgment because the court struck out the defendants' pleas is correct, and the motion for rehearing is therefore refused and overruled.

Rehearing refused.