# Law and Equity

IN THE

# SUPREME COURT

OF THE

# STATE OF NEW YORK.

---

THE CONNECTICUT MUTUAL LIFE INSURANCE COMPANY *vs.*
THE CLEVELAND, COLUMBUS AND CINCINNATI RAIL ROAD
COMPANY.

Bonds, issued by a rail road company, whether under its corporate seal or
not, payable to A. B., or the holder thereof, are negotiable, and will pass
by delivery.

If interest coupons, annexed to a bond of this description, are not paid, when
due, interest should be allowed, by way of damages for non-payment.

Where a corporation indorses upon an interest-warrant, or coupon, issued by
another company, a guaranty of payment, "for value received," it is not
to be deemed an accommodation indorser or guarantor. The words "value
received" import a sufficient consideration.

An arrangement between several connecting rail road companies, entered
into for the purpose of securing a uniform gauge of the several roads, and
thus increasing the business and profits of each, forms a sufficient consid-
eration for a guaranty by one of the corporations, of the payment of the
coupons issued by another.

Where the general rail road laws of Ohio declared that any rail road company
might, by means of subscription to the capital stock of any other company,

10  CASES IN THE SUPREME COURT.

Connecticut Mutual Life Ins. Co. *v.* Cleveland, &c. Rail Road Co.

or otherwise, aid such company in the construction of its rail road, for the purpose of forming a connection between said last mentioned road and the road owned by the company furnishing such aid; and authorized any two or more rail road companies whose lines were connected, to enter into any arrangement for their common benefit; *Held* that these provisions gave the power to companies whose lines of road were connected to enter into an arrangement with each other for the purpose of securing a uniform gauge of the connecting roads, and to make it part of such arrangement that one or more of the companies should guaranty the payment of the interest coupons issued by another.

If the guarantors, under such circumstances, have the general power to make the guaranty, it is immaterial as between third parties without notice and such guarantors, whether their acts are authorized or ratified by a vote of the stockholders, in accordance with the provisos of the general rail road statutes of Ohio; those provisos being intended for the protection of the shareholders, and relating rather to the mode or manner of the execution of the power.

Holders of the coupons guarantied have a right to presume that the guarantors have done their duty and have proceeded regularly, in the execution of the power.

Third parties dealing with a corporation are bound to know the law; that is, they are bound to take notice of the extent of its powers; but they have a right to assume, in the absence of any thing suggesting inquiry, that it has proceeded regularly in the execution of its powers. *Per* SUTHERLAND, P. J.

A guaranty of the payment of interest-warrants annexed to a bond may be valid, though the bond be void.

Where bonds and coupons, though executed in the state of Ohio, are payable in the state of New York, the cause of action arises here, and this court has jurisdiction, though both parties are foreign corporations.

THIS action was brought against the defendants to recover the amount due upon one hundred and forty coupons attached to twenty bonds issued by the Columbus, Piqua and Indiana Rail Road Company, the payment of which was guarantied by the defendants. The bonds were for $1000 each, dated April 1, 1854, and were made payable to Elias Fassett, or to the holder thereof, at the office of the Ohio Life Insurance and Trust Company, Wall street, in the city of New York, on the first day of April, 1869, with interest at the rate of seven per cent per annum, semi-annually on the first days of October and April, on the presentation of the annexed interest warrants, at said office. The bonds were

Connecticut Mutual Life Ins. Co v. Cleveland, &c. Rail Road Co.

signed by the president of the rail road company. The coupons, or interest-warrants annexed to the bonds, were in the following form, varied in each case as to the time of payment:

"The Columbus, Piqua and Indiana Rail Road Company will pay to the holder hereof, on the first day of April, 1869, at the office of the Ohio Life Insurance and Trust Company, in the city of New York, thirty-five dollars interest, due on that day on their bond, No. 385.

$35. M. G. MITCHELL, President."

The guaranty upon each coupon was as follows:

"The Cleveland, Columbus and Cincinnati Rail Road Company, for value received, hereby warrant and guarantee the punctual payment of the interest and principal of this obligation.

In testimony whereof, the said company, in pursuance of a resolution of the board, passed 6th day of March, 1854, have caused these presents to be signed by its president, this 7th day of April, 1854.

The Cleveland, Columbus and Cincinnati Rail Road Company, By H. B. PAYNE, President."

The defendants, in their answer, set up as a defense that the guaranty was unauthorized and without consideration, and that the plaintiffs had notice of it; also that the bonds were purchased from the Columbus, Piqua and Indiana Rail Road Company, by one William Dennison, jun. for less than their par value, and that Dennison was, at the time of such purchase, a director of that company; and that by the laws of Ohio the bonds thereby became null and void; and that the defendants were induced to make the guaranties by false representations made by the said Dennison, and one William Neil, of all of which the plaintiffs had notice. Also that the defendants were accommodation guarantors, and that the plaintiffs took the bonds with knowledge of the matters alleged by the defendants, and paid nothing except a small per centage for the bonds. Also that the original issuing of the bonds

was contrary to the laws of Ohio. Also that an injunction was pending, which forbade the payment.

Both parties were foreign corporations; the plaintiff being incorporated under the laws of the state of Connecticut, and the defendant, under the laws of the state of Ohio. The only demand ever made, for the payment of the coupons, before this suit was brought, was one made on the assignees of the Ohio Life Insurance and Trust Company, at the office of which company, in New York, they were made payable. The company itself had previously failed, and had no office in New York. No demand was ever made of the makers, or of the guarantors, before suit brought. The action was tried at the New York circuit, in January, 1862, before Justice PECKHAM and a jury, and, under the instructions of the judge, the jury found a verdict for the plaintiffs for $6378.62, being $4900 for the aggregate amount of the coupons, and $1478.62 for interest thereon. From the judgment entered on the verdict the defendant appealed.

*E. S. Van Winkle*, for the appellant. I. The judge erred in directing the jury to allow the plaintiffs interest on the coupons from their respective dates, because interest on interest cannot be recovered until *after* judgment, or upon a special agreement, made *after* the interest is due. (*State of Connecticut* v. *Jackson*, 1 *John. Ch.* 13. *Van Benschoten* v. *Lawson*, 6 *id.* 313. *Toll* v. *Hiller*, 11 *Paige*, 228. *Mowry* v. *Bishop*, 5 *id.* 98. *Quackenbush* v. *Leonard*, 9 *id.* 334. *Doe* v. *Warren*, 7 *Greenl.* 48. *Sparks* v. *Garreques*, 1 *Bin.* 165. *Hastings* v. *Wiswall*, 8 *Mass. R.* 455. 2 *Parsons on Cont.* 428, *and cases referred to in note r.*) The case of *Green-leaf* v. *Kellogg*, (2 *Mass R.* 548,) is overruled in 8 *Mass.* 455, and 7 *Greenl.* 48.

II. The defendants, being indorsers or guarantors, without consideration, and for accommodation, are only liable to *bona fide* holders, for value received, to the extent of the value paid, and the defendants having shown they were mere

accommodation indorsers, the burden of proving *bona fides,* and value paid, was on the plaintiffs, which they had failed to do, so far as regards the *bona fides.* (*Chitty on Bills,* 70, 9th ed. *Wiffin* v. *Roberts,* 1 *Esp.* 261. *Ingalls* v. *Lee,* 9 *Barb.* 647. *Rapelye* v. *Anderson,* 4 *Hill,* 472.) (1.) The defendants were mere accommodation indorsers or guarantors. The bonds were the liabilities of the Piqua Rail Road. None of the proceeds were to be received by the defendants. There was no binding obligation on any body to do any thing for the defendants, in consequence of their guarantying the bonds. In the eye of the law, they were mere accommodation indorsers. The guaranties were given on the 7th April, 1854, and under the alleged authority of a resolution passed on 6th March, 1854. These bonds at that time were the property of Messrs. Neil & Denison, to whom the Piqua road sold them on 25th February, 1854. The Piqua road had no interest in the guaranty, and the defendants did not and were not to receive any consideration from said Neil & Denison. (2.) The plaintiffs were not *bona fide* holders of the bonds. They did not receive them in the usual course of business. They did take with them notice of facts to impeach their validity. The *bona fides* is not determined by the adequacy of the consideration; for a low price or a high price may be equally paid in good faith or in bad faith. Neither is the *bona fides* determined by the belief that the guaranties were valid, for such an honest belief, coupled with notice, actual or constructive, that they were not valid, would defeat the *bona fides.* Now, the plaintiffs had such notice that the bonds were not valid. The guaranty was by one rail road company of the bonds of another rail road. This act requires a special legal authority, and purchasers were bound to see that it existed. The guaranty expressed it was in consequence of a resolution of the board, passed at such a time. This showed it was not an ordinary act, done by general authority, but an extraordinary act, done by special authority. The purchasers were bound to inquire whether such

resolution was in pursuance of any legal authority. The simultaneous indorsement of three separate guaranties on the bonds of one rail road company by three several rail road companies was notice that it was a special act and not in the ordinary and legitimate business of a rail road company. Inquiry would have shown that the indorsement was unauthorized. The plaintiffs were allowed by the judge to recover the face of the coupons and interest, and yet it appears they paid only about 75 or 80 per cent for them.

III. The guaranty was void, because neither the charter of the defendants, nor any law of the state of Ohio, nor any general rule of law, authorized the defendants to indorse the bonds. See the charter of the company, where the corporators are incorporated " for the purpose of constructing a rail road from the city of Cleveland, through the city of Columbus and the town of Wilmington, to the city of Cincinnati, and they are hereby invested with the powers and privileges which are by law incident to corporations of a similar character, and which are necessary to carry into effect the objects of the company." The act of revival conferred no additional powers. The defendants, therefore, had no authority, by their charter, to indorse the bonds of another rail road company. Nor had they such right by any general principle of law. (*Bank of Genesee* v. *The Patchin Bank,* 3 *Kern.* 309. *Morford* v. *Farm. Bank of Saratoga,* 26 *Barb.* 568. *Bridgeport Farm. and Mech. Bank* v. *The Empire Stone Dressing Co.,* 10 *Abb. Pr. R.* 47.) But the power is claimed to be found in the acts passed March 3, 1851, and May 1, 1852. There are four provisions in these acts under which, if at all, the right of the defendants to guaranty the bonds of the Piqua company can be found. These four are as follows : The first authorizes two rail road companies, in certain contingencies, to consolidate themselves into one corporation. That is not this case. The third authorizes any rail road, in certain cases, to purchase or lease all or any part of another road. That is not this case. The fourth authorizes any two or more rail

Connecticut Mutual Life Ins. Co. *v.* Cleveland, &c. Rail Road Co.

roads, whose lines are connected, to enter into any arrangement for their common benefit. This evidently refers to arrangements as to the management of the road, price of fare, time of running, number of trains, &c. It only remains to notice the second provision, which is in these words : "Any rail road company, heretofore or hereafter incorporated, may, at any time, by means of subscription to the capital stock of any other company, or otherwise, aid such company in the construction of its rail road, *for the purpose* of forming a connection of said last mentioned road with the road owned by the company furnishing such aid." Now, this subscription was not made for such purpose, but for the purpose of freeing another rail road from an injunction, and to enable it to change its gauge. These remarks relate to the act of 1851. The act of 1852 is in substance the same.

IV. The bonds themselves were void under the laws of the state of Ohio, act of December 15th, 1852, which declares that no bonds issued by any rail road company of the state of Ohio shall be purchased by a director of the institution at less than par, and if so purchased shall be made null and void ; and these very bonds of the Piqua company were purchased by Dennison, when he was a director of said company. The resolution authorizing the issue of the bonds was passed January 7, 1854. Dennison was then a director, and was present at the meeting. The written agreement of sale to Dennison was concluded on the 25th February, 1854. On the 14th February, 1854, Dennison was re-elected. He offered a resignation on March 3, 1854, which was accepted, and the office declared vacant ; but the laws of Ohio declare that directors shall continue such until their successors are elected and qualified. (*Act of February* 11, 1848, § 7.) Notes and other commercial paper, when declared void by statute, are void even in the hands of *bona fide* holders. (*See Rost* v. *Goddard*, 3 *McLean*, 102. *Bridge* v. *Hubbard*, 15 *Mass. R.* 96. *Sauerwein* v. *Brunner*, 1 *Harris & Gill*, 377. *Lucas* v. *Wool*, 12 *S. & M.* 157. *Story on Promissory Notes*, § 192.

16     CASES IN THE SUPREME COURT.

Connecticut Mutual Life Ins. Co. *v.* Cleveland, &c. Rail Road Co.

3 *Kent's Com.* 87, 90. *Chitty on Contracts,* " *of contracts void by statute.*")

V. If the bonds were void the guaranty was void. It is of the essence of a guaranty that there should be the valid obligation of a principal debtor. If there be no valid obligation, the guarantor or indorser is not bound. (*Warren* v. *Crabtree,* 1 *Greenl.* 169. *Garther* v. *F. and M. Bank of Georgetown,* 1 *Peters,* 37; *S. C.* 7 *Curtis,* 441. *Harrison* v. *Hammell,* 5 *Taunt.* 780. *Swift et al.* v. *Beers,* 3 *Denio,* 70. *Hayden* v. *Davis,* 3 *McLean,* 277. *Bright et al.* v. *Schuer, Ohio Rep.* 139, 141. *Robinson* v. *Abell,* 17 *id.* 36, 43.) Neither was there any sufficient presentation for payment. If the place or office named had ceased, or become impracticable, a demand should at least have been made of the guarantor, and of the maker, and it would seem that notice of presentment and non-payment by the maker should have preceded a suit against the guarantor.

VI. As the bonds were not indorsed by the payee therein named, the plaintiff cannot legally be the holder thereof. (*Avery* v. *Latimer,* 14 *Ohio Rep.* 542, 544.)

VII. This court has no jurisdiction of this case. The suit is brought by a foreign corporation; the defendant is a foreign corporation; no suit can be brought against a foreign corporation, except in the following cases. 1st. When the plaintiff is a resident of this state. 2d. When the plaintiff is not a resident of the state, when the cause of action shall have arisen, or the subject of the action shall be situated within this state. (*Code of Procedure,* § 427.) Neither the cause of action arose here nor is the subject matter situated here. The cause of action arose in Ohio, where the bonds and guaranties were made and executed, and where the parties to the contract resided. There is no subject of this action here; that clause relates to specific personal or real property situated here. If this action has any "subject," it is the defendant's contract. The object of the action was undoubtedly to get defendant's money in New York, but the subject of an

action and the object of an action are distinct things. (*The Western Bank* v. *The City of Columbus,* 7 *Howard,* 238. *Cantwell* v. *Dubuque Western R. R. Co.,* 17 *id.* 16. *Whitehead* v. *Buffalo and Lake Huron R. R. Co.,* 18 *id.* 218. *Campbell* v. *Proprietors of Champlain and St. Lawrence R. R. Co., Id.* 412.) See as to "subject matter of the action," *Bank of Commerce* v. *The Rutland and Washington R. R. Co.,* (10 *Howard,* 1.) Where the court has not jurisdiction of the subject matter, no consent or appearance can confer jurisdiction, and an objection to jurisdiction can be taken at any stage of the action. (*Harriot* v. *The N. J. R. R. and Trans. Co.,* 2 *Hilton,* 262, *and cases there cited.*)

*Wm. E. Curtis,* for the respondent. I. The defendant's first exception is that by which it makes the objection that the bonds were not made under seal, and not indorsed by the payee. The court properly overruled the objection. The bonds are drawn payable in the city of New York to Elias Fassett or holder, and are negotiable, passing by delivery, and have been so adjudged. (*Zabriskie* v. *The Cleveland, Columbus and Cincinnati R. R. Co.,* 23 *How. U. S. Rep.* 400.) The bonds and coupons are payable in this state, and the cause of action arose here, and the law merchant applies to their transfer. (*The Conn. M. L. Ins. Co.* v. *The C. C. and C. R. R. Co.,* 23 *How. Pr. Rep.* 180.) There is nothing in the laws or decisions of Ohio changing the law merchant as to the transfer of notes or securities payable to "*any person or holder.*" It has been repeatedly held in Ohio that affixing seals to such an instrument does not vary the commercial characteristics of the paper. (*Bain* v. *Wilson,* 10 *Ohio Rep.* 19. *Bank of St. Clairsville* v. *Smith,* 5 *id.* 222.)

II. The second exception of the defendant is to the ruling of the judge, that the plaintiff is entitled to recover interest upon the coupons. The judge did not err. The coupons are negotiable promises to pay a certain sum of money at a certain time to the holder, so made as to be cut off and be cir-

18          CASES IN THE SUPREME COURT.

Connecticut Mutual Life Ins. Co. *v.* Cleveland, &c. Rail Road Co.

culated independently of the bonds. If not paid when due, the general rule as to interest applies to them, the same as to any other negotiable security. It is a contract between the maker and the holder, and may be sued without producing the bond. (*Commissioners of Knox County* v. *Aspinwall*, 21 *How. U. S. Rep.* 539. *Redfield on Railways*, § 239, *and cases cited in note. Hollingsworth* v. *Detroit*, 3 *McLean*, 472. *County of Beaver* v. *Armstrong*, 20 *Legal Intelligencer*, 44. *Watkinson* v. *Root*, 4 *Hammond's Ohio Rep.* 373. *Fobes* v. *Canfield*, 3 *id.* 18. *Pierce &c., ex's*, v. *Rowe*, 1 *Adams' N. H. Rep.* 179. 2 *Curwen's Ohio Stats.* 1407, 1569. 3 *id.* 2317.)

III. The third exception of the defendant is to the judge's refusal to instruct the jury that the defendant, being indorser or guarantor without consideration and for accommodation, is only liable to *bona fide* holders for value received to the extent of the value paid, and the defendant showing it is mere accommodation indorser, the burden of proving *bona fides* and value is on the plaintiff. The judge did not err. The consideration is expressed on the face of the guaranty. *Miller* v. *Cook*, 22 *How. Pr. Rep.* 66.) If it is admissible to inquire beyond the face of the instrument, then the plaintiff urges that there was no evidence in the case, showing that the defendant was indorser or guarantor without consideration, but, on the contrary, showing that it was guarantor for a good consideration. The only evidence, independent of the face of the paper, in respect to the consideration for the guaranty, is to be found in the printed record in the case of *Zabriskie* v. *The Cleveland, Columbus and Cincinnati R. R. Co.*, reported 23 *How. U. S. Rep*, 381, and in which it clearly appears that there was a good and valuable consideration, viz : the obtaining control, by the defendant, of various beneficial interests, including a change of gauge and rail road connection, to increase their business. (*See opinion, on this point*, 23 *How.* 399.) Even if there had been evidence to warrant the judge in charging, as requested, that

Connecticut Mutual Life Ins. Co. *v.* Cleveland, &c. Rail Road Co.

the guaranty was without consideration and for accommodation, still there is no foundation for the limitation of the defendant's liabilities as claimed, and if there was, it must apply to an action on the bonds and not to one on the coupons, as they are of themselves an independent engagement, and negotiable. The laws of Ohio, in relation to the issue of these bonds, expressly negative any such limitation of liability. The statutes of Ohio provide, that in case of sales of bonds, by directors, at a discount, "Such sale shall be as valid in every respect, and such securities as binding for the respective amounts thereof, as if they were sold at their par value." (*Swan's Ohio Stat.* 200, 240.) The supreme court of Ohio held, on appeal, that these very bonds were valid securities, and held that an order requiring the bondholders to state the amounts paid for the bonds was erroneous. (*Cox* v. *Columbus and Piqua R. R. Co.*, 10 *Ohio Rep.* 375, 395 to 399, *and* 410.) There was no attempt, on the part of the defendant, to show any notice to the plaintiff, of any of the matters set up in the answer.

IV. The judge very properly declined to instruct the jury, as requested, that the guaranty of the defendant was unauthorized and unlawful. He followed the decision of the supreme court in the case of Zabriskie against the defendant, (23 *How.* 381,) where the same questions, in respect to these bonds, were considered and decided, and upon the same evidence. The statutes of Ohio authorized the making of the guaranty by the defendant. (2 *Curwen's Ohio Stat. p.* 1657, § 4. 3 *id. p.* 1884, § 24. *Zabriskie* v. *Cleveland, Columbus and Cincinnati R. R. Co.*, 23 *How. U. S. Rep.* 395 to 399.) The plea of *ultra vires*, according to its just meaning, imports, not that the corporation could not, and did not in fact make the unauthorized contract, but that it ought not to have made it; such a defense therefore necessarily rests upon the violation of trust or duty toward the shareholders, and it is not to be entertained where its allowance will do a greater wrong to innocent third parties. The acquiescence of the

shareholders in the abuse will prevent the interposition of such a plea. (*Bissell v. The Mich. Southern and Northern Indiana R. R. Co.*, 22 *N. Y. Rep.* 258. *Society for Savings* v. *New London*, 1 *Am. Law Reg.* [*N. S.*] 241.)

V. The judge did not err in declining to instruct the jury as requested, that the plaintiff could not recover because the bonds were void under the act of the state of Ohio, passed December 15, 1852, in respect to annulling bonds purchased by a director of the institution issuing them, at less than par, and also that Dennison was in law a director when he purchased them. The supreme court of Ohio have decided that these identical bonds are valid securities, and upon which the holders are entitled to recover the full amount and interest, without reference to what they paid for them. (*Coe* v. *Columbus and Piqua R. R. Co.*, 10 *Ohio Rep.* 395 to 399 *and* 410.) The United States supreme court say; "In deciding upon this contract, we deem it unimportant to settle whether Dennison was a director of the Piqua company the 25th of February, 1854, when he signed the contract with the committee of the Piqua board of directors." (*Zabriskie* v. *C. C. and C. R. R. Co.*, 23 *How. U. S. Rep.* 399.) The testimony shows Dennison was not a director of the Piqua company.

VI. The court did not err in declining to instruct the jury that if the bonds were void the guaranty was void. (1.) The United States supreme court held, that in deciding upon the validity of the guaranty it was unimportant to settle whether the bonds of the Piqua Company were null and void. "The contract of the guarantors, indorsing the bonds, is a distinct contract, and may impose an obligation upon them, independently of the Piqua company." (*Zabriskie* v. *C. C. and C. R. R. Co.*, 23 *How. U. S. Rep.* 399.) An indorser is liable though the maker's name is a forgery, or the note for any other reason is void. (*Edwards on Bills*, 289.) (2.) The guarantor may be held although no suit could be maintained upon the original debt, and such guaranty may have been required for the very reason that the original debt could not

be enforced at law, as where the guarantor promises to be responsible for goods to be supplied to a married woman, or to be sold to an infant, not being necessaries. (1 *Parsons on Contracts*, 494, *and cases cited in note. Mann* v. *Eckford,* 15 *Wend.* 502.) (3.) The defendant's objection does not extend to the coupons, but is limited to the bonds only.

*By the Court,* SUTHERLAND, P. J. This action was brought to recover the amount due on one hundred and forty coupons originally attached to twenty bonds issued by the Columbus, Piqua and Indiana Rail Road Company, the payment of which was guarantied by the defendant by written indorsements on the bonds, guarantying the payment of principal and interest.

The defendant sets up in its answer that the guaranties were unauthorized and without consideration, and that the plaintiff had notice of it; also, that the bonds were purchased from the Piqua company by one William Dennison, jun. for less than their par value, and that he was at the time of such purchase a director of that company, and that, by the laws of Ohio, the bonds, for that reason, became void; and that the defendant was induced to make the guaranties by false representations made by the said William Dennison, jun. and one William Niel, of all which the plaintiff had notice; also, that the defendant was accommodation guarantor, and that the plaintiff took the bonds with knowledge of the matters alleged by the defendant, and paid nothing except a small per centage for the bonds; also, that the original issuing of the bonds was contrary to the laws of Ohio; also, that an injunction was pending which forbade payment.

On the trial of the action at the circuit, there was a verdict for $6378.62 for the plaintiff, from the judgment entered on which the defendant has appealed to the general term.

The bonds are payable in the city of New York, to Elias Fassett or holder. They are negotiable, passing by delivery, and would have been had they been under seal. Their nego-

tiability was assumed, if not decided, in *Zabriskie* v. *The Cleveland, Columbus and Cincinnati R. R. Co.*, (23 *How. U. S. Rep.* 400.) Similar bonds have repeatedly been held by the courts to be negotiable. It was so held or assumed recently by the court of appeals of this state, in actions on one or more Harlem Rail Road bonds, under seal, I believe. (*See also Redfield on Rail.* § 239, *and cases cited in note.*) It has been repeatedly held in Ohio that affixing a seal to such an instrument does not affect its negotiability. (*See Bain* v. *Wilson*, 10 *Ohio Rep.* 19; *Bank of St. Clairsville* v. *Smith*, 5 *id.* 222.) The English decisions are, too, I think, to the same effect. This point was raised by the defendant's first exception, on the introduction of the bonds in evidence, and subsequently by another exception when the case was submitted to the jury. Neither exception was well taken.

In my opinion the judge was right in permitting the plaintiff to recover interest on the coupons. This point is presented by the defendant's second exception. The coupons are negotiable promises to pay a certain sum of money, on a certain day, to the holder; so made as to be cut off and circulated independently of the bonds. If not paid when due, I think interest should be allowed by way of damages, for the delay of payment. They do not contain any express promise to pay interest on the interest, and if they did, I think interest would or should be allowed, not by force of the promise, but as a compensation for the delay of payment, by way of damages.

The general rule is, that where there is a written contract to pay money on a day and at a place fixed, and the contract is broken, interest is allowed. (*Williams* v. *Sherman*, 7 *Wend.* 109. *Still* v. *Hall*, 20 *id.* 51. 52. *Reid* v. *Rens. Glass Factory*, 3 *Cowen*, 436; *S. C.* 5 *id.* 587.)

The chancery cases in this state are undoubtedly to the effect that compound interest can only be recovered upon a written agreement to pay it, made after the interest upon

which it operates has fallen due. (*State of Connecticut* v. *Jackson,* 1 *John. Ch.* 13. *Van Benschooten* v. *Lawson,* 6 *id.* 313. *Mowry* v. *Bishop,* 5 *Paige,* 98. *Quackenbush* v. *Leonard,* 9 *id.* 334. *Toll* v. *Hiller,* 11 *id.* 228.) In *State of Connecticut* v. *Jackson,* Chancellor Kent says: "Even an original agreement at the time of the loan, or contract, that if interest be not paid at the end of the year, it shall be deemed principal and carry interest, will not be recognized as valid. Such a provision would not amount to usury; (*Le Grange* v. *Hamilton,* 4 *T. R.* 613; 2 *H. Black.* 144;) but this court certainly and *perhaps* a court of law would not give effect to such a provision." In *Van Benschooten* v. *Lawson,* (*supra,*) the chancellor held, that the agreement, though made *after* the interest had fallen due, must be prospective in its operation, as that the interest *then* due and payable should carry interest thereafter. In *Mowry* v. *Bishop,* (*supra,*) Chancellor Walworth held, that an agreement to pay interest on *arrears* of interest, which had already become due, is valid, and that if compound interest is voluntarily paid it could not be recovered back; that the moral obligation of the debtor to make the usual remuneration for the loss of interest sustained by the creditor was a sufficient consideration to support a subsequent agreement in writing to pay interest on such arrears of interest. I have some difficulty in seeing, if such moral obligation is sufficient to support such subsequent written promise, why it was not right to allow the plaintiffs in the principal case interest upon their coupons without any promise. In *Mowry* v. *Bishop,* the chancellor said, that the principle that an agreement to pay interest upon interest to accrue after the making of the agreement, cannot legally be enforced, was adopted merely "as a rule of public policy, to prevent an accumulation of compound interest in favor of negligent creditors who do not call for the payment of their interest when due." The reason or ground of the general rule, that interest upon interest cannot be recovered, as thus stated, certainly does not apply to the principal case, and

should not have prevented a recovery of the interest on the coupons. There is no danger of rail road creditors being negligent in presenting their coupons for payment, though they may run other risks. Rail road corporations certainly do not need protection from want of diligence on the part of their creditors.

In *Van Benschooten* v. *Lawson, (supra,)* Chancellor Kent said that agreements to pay interest on interest to accrue would not be enforced, because they were oppressive. I repeat, certainly there is no danger of rail road corporations being oppressed from want of diligence on the part of their coupon creditors.

As to how far the general rule or principle before adverted to, as established by the chancery cases in this state, has been recognized by the courts of law of this state, see *Kellogg* v. *Hickok,* (1 *Wend.* 521;) *Jackson* v. *Campbell,* (5 *id.* 572;) *Boyer* v. *Pack,* (2 *Denio,* 107;) *Van Rensselaer* v. *Jones,* (2 *Barb. S. C. Rep.* 666, 667;) *Forman* v. *Forman,* (17 *How. Pr. R.* 255;) *Henderson* v. *Hamilton,* (1 *Hall,* [*N. Y. Superior Court,*] 314.) In *Van Rensselaer* v. *Jones,* Judge Willard appeared to think it by no means clear that the cases in this state would prevent a recovery of interest on interest in a case like the principal case.

There is no doubt that in several of the states the plaintiffs would have been permitted by the courts to recover interest. (*See Catlin* v. *Lyman,* 16 *Verm.* 45; *Greenleaf* v. *Kellogg,* 2 *Mass.* 548; *Hastings* v. *Wiswall,* 8 *id.* 455; *Watkinson* v. *Root,* 4 *Ham. Ohio Rep.* 373; *Pierce* v. *Rowe,* 1 *Adams' N. H. Rep.* 179; *Hollingsworth* v. *Detroit,* 3 *McLean,* 472.)

Upon the whole I can see no good reason nor controlling authority for saying, that the plaintiff should not have recovered interest on its coupons. From the transaction, I infer, that the Piqua company expected to pay interest on its coupons if they were not paid when due.

The judge was right in declining to instruct the jury, as requested by the defendant, that the defendant being in-

dorser or guarantor, without consideration, and for accommodation, is only liable to *bona fide* holders for value received, to the extent of the value paid, and the defendant showing that it is a mere accommodation indorser, the burden of proving *bona fides* and value is on the plaintiff. The defendant was not accommodation indorser or guarantor. There was a sufficient consideration expressed on the face of the guaranty. The words "value received" imported a sufficient consideration. (*Miller* v. *Cook*, 22 *How. Pr. Rep.* 66. *Douglas* v. *Howland*, 24 *Wend.* 35.)

I think, too, the case shows a sufficient consideration for the guaranties outside of them. A rail road corporation must be presumed to be created not only for public convenience, but also for private profit. The arrangement which was entered into between the defendant and the other companies, of which the guaranties were a part, was entered into for the purpose of securing a uniform gauge of the connecting roads, and thus to increase its business and profits. The presumption is that the defendant has received the anticipated advantages from the arrangement. I think, therefore, that the defendant's third exception was not well taken.

In my opinion the judge was also right in declining to instruct the jury, as requested, that the guaranties were unauthorized and unlawful. No doubt the plea of *ultra vires* raised the question of the corporate power of the defendant to make the guaranties, as between the corporation and the state of Ohio, and not merely the question as between the corporation and its shareholders, whether the making of the guaranties was a breach of trust. A corporation is the mere creature of law, and cannot act at all without law. A contract made by it, without authority, is void, even in the hands of a *bona fide* holder, for value. Its legal capacity to contract cannot be enlarged by estoppel.

But, I think, the defendant was authorized by the sections of the general rail road laws of Ohio, inserted in the case, to enter into the arrangement with the other companies, and to

make the guaranties as a part thereof. These sections declare, that "any rail road company, heretofore or hereafter incorporated, may, at any time, by means of subscription to the capital stock of any other company, or otherwise, aid such company in the construction of its rail road, for the purpose of forming a connection of said last mentioned road with the road owned by the company furnishing such aid," &c. There is another clause of these sections which authorizes any two or more rail roads, whose lines are connected, to enter into any arrangement for their common benefit. The counsel for the defendant insists, that this last provision evidently refers *to arrangements as to* the management of the road, price of fare, time of running, number of trains, &c. But I do not see why this limited construction should be given to the provision, particularly as against the plaintiff, who is a *bona fide* holder for value, there being nothing in the case showing that it had notice of any of the defenses set up in the answer. The language is broad enough to cover the arrangement which the defendant entered into with the other companies, and the guaranties as a part of it. Perhaps this question of power may be said to have been decided in *Zabriskie* v. *Cleveland, Columbus and Cincinnati R. R. Co.,* (23 *How. U. S. Rep. supra,*) although that action was brought by Zabriskie as a shareholder.

It is not necessary to inquire or decide whether the acts of the defendant were authorized or ratified by a vote of the stockholders, in accordance with the provisos of the said sections of the Ohio general statutes, if the defendant had the general power to make the guaranties; for these provisos were intended for the protection of the shareholders, and relate rather to the mode or manner of the execution of the power; and the plaintiff had a right to presume that the defendant had done its duty, and had proceeded regularly in the execution of the power. (*See Commissioners of Knox Co., Indiana,* v. *Aspinwall,* 21 *How. U. S. Rep. opinion,* 545; *The Royal British Bank* v. *Tarquand,* 6 *Ellis &*

*Blackb.* 327 ; *and Zabriskie against this same defendant,* 23 *U. S. Rep. supra.*)

This doctrine does not at all interfere with the principle of the limitation of the powers of corporations and its consequences, before stated. Third parties dealing with a corporation are bound to know the law ; that is, they are bound to take notice of the extent of its powers, but they have a right to assume, in the absence of any thing suggesting inquiry, that it has proceeded regularly in the execution of its powers. I think, therefore, the defendant's fourth exception was not well taken.

I think the judge was also right, in declining to instruct the jury, as requested by the defendant, that the plaintiff could not recover because the bonds were void, under the Ohio act of December 15, 1852, declaring that no director of a rail road company shall purchase any of the bonds, &c. of any rail road of which he may be a director, for less than the par value thereof, and that all such bonds, &c. so purchased, shall be void. The supreme court of Ohio has decided that these bonds were valid securities, and upon which the holders are entitled to recover the full amount of principal and interest, without reference to the amount paid for them. (*Coe* v. *Columbus and Piqua R. R. Co.*,10 *Ohio Rep.* 395, 399 *and* 410.) In Zabriskie against these same defendants, (23 *How. U. S. Rep. supra,*) the United States supreme court say: "In deciding upon this contract, we deem it unimportant to settle whether Dennison was a director of the Piqua company on the 25th February, 1854, when he signed the contract with the committee of the Piqua board of directors." I doubt, too, whether Dennison was a director on the 25th of February, 1854, within the meaning and intent of the act of December 15, 1852, although he may have been within the meaning of the Ohio act of February 11th, 1848, declaring that directors shall continue such, until their successors are elected and qualified. I think, therefore, the defendant's fifth exception was not well taken. Neither do I think that

---
Chesbrough *v.* Wright.
---

the defendant's sixth exception was well taken. The judge declined to instruct the jury that, if the bonds were void, the guaranties were void. In the case of Zabriskie, the United States supreme court held that it was not necessary to settle whether the bonds of the Piqua company were void. The court said, "The contract of the guarantors, indorsing the bonds, is a distinct contract, and may impose an obligation upon them independently of the Piqua company." An indorser may be liable, though the maker's name is a forgery. (*Herrick* v. *Whitney*, 15 *John.* 240. *Shaver* v. *Ehle*, 16 *id.* 201. *See also,* 1 *Parsons on Con.* 494, *and cases cited in notes.*)

It was decided by the general term, in this action, the bonds and coupons being payable here, that the cause of action arose here, and that this court had jurisdiction, though both parties were foreign corporations. (*The Connecticut M. Ins. Co.* v. *The C. C. and C. R. R. Co.*, 23 *How. Pr. Rep.* 180.)

My conclusion is that the judgment should be affirmed with costs.

[NEW YORK GENERAL TERM, November 30, 1863. *Sutherland, Leonard* and *Mullin*, Justices.]