## The Farmers' Loan and Trust Company *vs.* Clowes and Wife.

The plaintiffs were incorporated in February, 1822, with power to make loans, insure lives, and grant annuities. The charter was limited to *fifteen years*, except as to insurances and annuities. In April of the same year, by another act containing no limitation of time, they were authorized to increase their capital, to take and hold property in trust, and to assume and execute trusts. By another act passed in April, 1836, the name of the corporation was changed, the directors classified, and the amount of property which it might hold in trust limited. This act was also silent as to the duration of the charter. Under these several acts, *held*, that the charter did not expire at the end of the fifteen years, but continued to exist indefinitely after that time.

The *express power* to make loans originally granted, expired with the fifteen years, but held nevertheless that the power continued after that time as *incidental* to the other powers of the corporation, and therefore that a bond and mortgage taken for a loan after the fifteen years had run out were valid.

A corporation authorized by its charter to insure lives, grant annuities, hold property in trust, and execute trusts, has power by implication to loan and invest the funds intrusted to its care.

And where a loan made by such a corporation is contested by the borrower, on the ground of a want of power to make it, it rests upon him to show affirmatively that the loan was not made in the proper exercise of the powers expressly granted.

The original charter required that bonds and mortgages taken on loans should be conditioned for payment in not less than one year, with annual interest. This requirement, it seems, expired with the express power to make loans, so that a bond and mortgage, with a different condition in respect to time of payment, taken for a subsequent loan, would be valid.

But if otherwise, a bond and mortgage dated in August, 1837, and conditioned for payment in "one year from date, with interest, payable yearly as the same should accrue, on the first day of November in each year," was a compliance with the requirement of the charter. The interest, it seems, could not be exacted until November, 1838.

Where a lender advanced the full amount of the securities received by him on the loan, *held*, there was no usury, although the borrower sustained a loss in consequence of an arrangement made by him with a third person, through whom the loan was effected, it not appearing that the lender had any knowledge of the arrangement, or received any benefit therefrom.

APPEAL from a decree of the supreme court affirming a decree of foreclosure, &c. granted by the vice chancellor of the first circuit. The facts are stated in the opinion of the court.

*N. Hill, Jr.* for appellants.

*Wm. Curtis Noyes,* for respondents.

HURLBUT, J.   The bill in this case was filed for the foreclo-
sure of a mortgage given by the defendants to the plaintiffs,
bearing date the 19th day of August, 1837, to secure the pay-
ment of $3000 in one year from date, with interest at the rate
of seven per cent, payable yearly as the same should accrue, on
the first day of November in each year, until the principal,
which had been loaned by the plaintiff to Mr. Clowes, should
be paid.

The defendants rely upon the following grounds of defence:
1. That the charter of the company had expired at the time of
the loan.   2. That if in existence the company had no author-
ity to make a loan.   3. That the bond and mortgage were
not conformable to their charter, and therefore void; and 4.
That they were void for usury.

The plaintiffs were incorporated by an act of the legislature
passed on the 28th of February, 1822, under the name of "The
Farmers' Fire Insurance and Loan Company," with power to
make loans on the security of bonds and mortgages, and certain
stocks mentioned in the act, and to receive such conveyances
of real and personal property as might be necessary to enable
them to obtain payment and satisfaction of such loans.   They
were also authorized to insure all kinds of property against loss
or damage by fire, to insure upon lives, and to grant annuities.
Their capital was fixed at $500,000, with power to increase it
to a million; and the charter was limited so as to expire at the
end of fifteen years, except as to insurance upon lives and the
granting of annuities.   By a subsequent act passed on the 17th
of April, 1822, the company was authorized to take by deed
or devise any effects or property which might be left or conveyed
to them in trust, and to assume and execute any trust which
might be created by deed or devise, in the same manner and to
the same extent as any trustee.   This statute allowed of an in-
crease of their capital to one million of dollars, more than was

authorized by the original act, but contained no limitation as to the duration of the powers conferred by it.

A statute of April 30, 1836, changed the name and style of this corporation, to that of "The Farmers' Loan and Trust Company." Except as to this change and the classification of directors, the provisions of this act were of a restrictive character. It limited the amount of property which the company might at any time hold in trust to five millions of dollars, and declared that nothing contained in it should be construed to confer on the corporation any powers other than those conferred by the original act of incorporation, and the act amending it, except in relation to the change of its name and the election and classification of directors. This act also was silent as to the duration of the charter.

These statutes taken together leave no room to doubt that the charter of the company was in existence at the time of the loan, which is the subject of this controversy. Their corporate capacity remained, with power to insure upon lives, to grant annuities, and to assume and execute trusts. These powers were conferred without any limitation in respect to the time of their duration, and must exist until they are repealed by an act of the legislature. In respect to them the charter is perpetual.

But the defendants still insist that the company had no express power to loan money, that power having expired by limitation at the end of fifteen years, and that such a power can not be raised by implication after an express withdrawal of it by legislative design.

Although the act of April, 1836, designates this corporation as a *loan* company, it did not confer any powers which could warrant that title, and all it did in this respect was to create a *misnomer*. So that the authority of the company to make loans of money can only be upheld as an incident to the other powers conferred by their charter. It has been seen that by the original act of incorporation this power was not only expressly conferred, but was put forth as the leading one with which the legislature saw fit to clothe the company. They were authorized to increase their capital to a million of dollars mainly, as it would

seem, for the purpose of accommodating borrowers, and care was taken that they should loan a large share of their capital to persons residing without the limits of the city of New-York. This power ceased at the expiration of the period mentioned, after which the company no longer existed for the express purpose of loaning money, but nevertheless remained a corporation for other declared purposes, with precisely the same rights and powers as though those purposes had alone been the object of their original creation. They are not forbidden to loan money after the expiration of fifteen years, but they were not thereafter expressly authorized to do so. They were no longer a loan company, but were now a life insurance and trust company, with power to grant annuities, and having a right to employ all their original capital in the business to which they had become restricted, and to hold property in trust to the amount of five millions of dollars. It could hardly have been contemplated by the legislature that their capital should remain unproductive in their vaults, and especially not that the funds held by them in trust should remain uninvested. It was their very business to see that they were safely and properly invested, as well for the security of the beneficiaries, as for their own protection. In no other way could they preserve their existence and solvency, or execute trusts in the manner of other trustees. The case differs from the *N. Y. Fireman's Insurance Company* v. *Ely and Parsons,* (5 *Conn. Rep.* 560; 2 *Cowen,* 278;) where the charter provided amply for investing the funds of the corporation, and pointed out the manner in which it should be done, while it expressly denied banking powers; and the court held that the discount of a note by a fire insurance company, under such a charter, was unauthorized and void.

I think the true view of the powers of the plaintiffs under their charter was taken by the learned assistant vice chancellor, in the case of *The Farmers' Loan and Trust Co.* v. *Perry and others,* (3 *Sandf. Ch. R.* 339,) where their authority to make loans upon bond and mortgage was sustained as a proper and necessary means of enabling them to effect the purposes for which they were incorporated, and especially to fulfil

their duties and obligations in respect to the trust powers con ferred by their charter. Assuming, then, that the plaintiffs were authorized for that purpose to make loans, it rested upon the defendants to show expressly that the loan in question was not made in the proper management or investment of the funds intrusted with the company, as in the absence of proof to the contrary, it will be intended that the company were pursuing their lawful business when they advanced the money to the defendants upon the securities in suit. The evidence adduced by them on this subject, does not establish with any certainty from what fund the loan proceeded, and I think the defence upon this ground must be deemed to have failed.

The next objection is, that the bond and mortgage were not taken according to the charter, the third section of which provides " that any such loans on bond and mortgage or other securities on real estate, shall not be made payable in a shorter time than one year, and the interest payable annually." This section appears to have related to the securities to be taken on the loans which the company were expressly authorized to make during the first fifteen years of their existence, and I incline to think, became inoperative when the express power of the company to make loans ceased. But if not, I am unable to perceive that the securities in the present case were taken in violation of this provision of the statute. The bond and mortgage were payable in one year, with interest to be paid yearly as the same should accrue on the first day of November in each year. Their language in this respect is capable of being construed in harmony with the provisions of the third section of the act, by disregarding the first November after the date of the securities, as a time of payment, and treating the first payment of interest as having accrued on the first day of November, 1838, which it seems proper to do, in order to carry out the intention very clearly expressed that the interest should be payable " as the same should accrue *yearly.*"

Nothing remains to be considered but the defence of usury, which as it seems to me, has altogether failed. The plaintiffs advanced their checks for the precise amount of the securities

received from the defendants; and it was by no act of the former that Mr. Clowes came to receive less than the full amount of the loan in money. His arrangement with Judge Cushman, by which the latter induced him to receive stock in lieu of a part of the money, is not shown to have been known to the company, nor does it appear that they were, or could have been benefited in any manner by the transaction.

The decree of the supreme court must be affirmed.

Decree affirmed.