McKEE (UNITED STATES v.). See Cases Nos. 15,683–15,689.

## Case No. 8,851.

### McKEE v. VERNON COUNTY.

[3 Dill. 210.] [1]

Circuit Court, W. D. Missouri. 1874.

MUNICIPAL BONDS—SUBSTITUTION OF NEW BONDS FOR OLD—ESTOPPEL.

The agent of the county and the presiding justice of the county court substituted engraved bonds, the signatures on the coupons of which were lithographed, for private bonds, the new bonds being of the same date and amount as the old, and the old being at the same time destroyed; there was no order of the county court for the substitution, but the county afterwards paid interest for two years, retained the certificate of stock, which was the consideration of the bonds, and entered of record other reasons than the substitution, for ceasing to pay interest on the new bonds: *Held* that the plea of non est factum was not sustainable as a defense to an action to recover coupons on the new bonds.

This suit [by Logan McKee] was for collection of interest coupons from bonds proved to have been executed by the presiding justice and clerk of the county court, and substituted, with the knowledge of the county agent, for other bonds regularly issued about seven months previously, which were surrendered and destroyed at the time of the substitution. Plea, non est factum. Reply (1) in denial; (2) estoppel. It appeared in proof that the county held $300,000 of railroad stock, and the railroad was built through the county. The defendant claimed that the surrender and destruction of the old bonds by their holders released the county, and the issue and delivery of new bonds without any order of the county court were without authority and that the bonds were therefore void. A jury was waived and the case tried to the court.

Mr. Stephenson, Mr. Shippen, and Ewing & Smith, for plaintiff.

Mr. Stone, Mr. Burton, Mr. Jackson, and W. P. Johnson, for the county.

Before DILLON, Circuit Judge, and KREKEL, District Judge.

DILLON, Circuit Judge (orally). This is an action brought against Vernon county on coupons attached to bonds issued under authority contained in the charter of the Tebo and Neosho Railroad Company, approved in

---

[1] [Reported by Numa Hubert, Esq., and here reprinted by permission.]

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

January, 1860, which conferred on the county court power to take stock in such company and issue bonds in payment therefor. The county court made a subscription to the capital stock and issued bonds to the amount of three hundred thousand dollars. This action is on the coupons for interest upon some of these bonds. The defendant pleads non est factum, to which plaintiff replies by denial, and by setting up that the county is estopped, 1st, by its having levied taxes and paid coupons up to 1872, making two or three payments; and 2d, by having received a certificate of its stock from the railroad company, and still holding it; whereby the plaintiff claims the case is brought within the decision in 13 Wall. Pendleton Co. v. Amy, 13 Wall. [80 U. S.] 297.

Upon the trial it appeared as follows: The county court made an order of subscription for the railroad stock, and appointed Mr. Birdseye, as the agent of the county, directing him to prepare the bonds, which were accordingly prepared and were issued under the order. The original bonds were printed and were signed by the presiding justice, and sealed with the seal of the county. The clerk was Hall, who had a deputy, Weyand. Hall being a dissipated man, Weyand attended to his duties and signed Hall's name with the knowledge of the presiding justice and of the county agent. These bonds did not receive favor because not printed in good style, and the county agent proposed to the presiding justice to substitute engraved bonds for the printed ones, and to this the presiding justice acceded. The old bonds were surrendered and destroyed by the presiding justice, as he testifies, and in January, 1871, new bonds were issued corresponding in terms and form with the old ones. Members of the county court had gone out of office and new members had come in, and Hall, the former clerk, had gone out of office and Weyand had become clerk.

The substituted bonds bore the same date with the former ones, and were signed by the same presiding justice and the same clerk, and this was at the instance and in the presence of the county agent to whom the matter had been especially intrusted by the county court. As the new bonds were made to bear the old date, Weyand still signed the name of Hall, his predecessor in office, for whom he had been deputy, and the signatures on the coupons were lithographed. These bonds were delivered by the presiding justice to the county agent, who proceeded to carry out his instructions.

The county paid interest on these new bonds in 1871 and 1872, and there was evidence that the county received a certificate of stock in the railroad company, not produced at the trial, but remaining in the possession of the county. The county court ordered the subscription to be made, and the bonds to be executed by the presiding justice, and attested by the clerk and the seal of the county. The statutes of Missouri make no provisions as to the mode in which these securities shall be executed.

The only irregularities presented in this case are, 1st, the substitution of new for old bonds; and 2d, the signing by Weyand of Hall's name as clerk. The question is then, whether the plea of non est factum is supported by proof of these irregularities.

If the statute provided expressly the mode in which these securities must be issued, the question, in case of non-conformity with its requirements, would be more difficult. The bonds were ordered to be attested by the clerk, but what was done afterwards in levying taxes and payment of interest makes a waiver of that part of the order, and the county is now estopped in relation thereto.

These irregularities are not so great as in the Winnebago Case in Iowa, decided by the United States supreme court. 16 Wall. [83 U. S.] 6. The county judge there issued bonds which were objected to in New York, and he, as county judge and agent in New York, more than 1,000 miles from his official residence, had a new county seal made, cancelled the old bonds and issued new bonds in substitution. The power of a county judge in Iowa is no greater than of the county court in Missouri. Here there are no checks on the judges, and no fraud is alleged, and the county suffered no wrong. The feature of the substitution is much worse in the Winnebago County Case.

In reaching these conclusions our views are strengthened by the order made of record by the Vernon county court, declaring its reasons for not paying its interest. They were not the substitution of bonds, or the informality of execution, but solely on a ground not here taken in defense, namely, that the railroad company did not complete its main line according to contract. Again, we deem the acts and participation of the county agent of importance, and the county is to be held to know what he and the presiding justice knew. The failure to give notice of the special term of the county court is of no importance whatever.

The bonds recite their issue under the Tebo and Neosho Railroad charter, and if as we hold in this case they are the bonds of the county, no failure in the performance of duty on the part of the officers can affect the rights of bona fide holders.

We find for the plaintiff for the amount of his coupons, with interest from maturity. Judgment accordingly.

In Pennington v. Baehr [48 Cal. 565], July term, 1874, the supreme court of California decided that coupons may be signed by a printed fac simile of maker's autograph, although not expressly authorized by statute.