The Metropolitan Life Insurance Company, Appellant, *v.* Esther M. Bender et al., as Executrix, etc., Respondents.

Where a penal bond recites that it was executed under seal, the obligor is estopped, in an action on the bond, from denying that it was so executed, when it appears that he knew the difference, in legal effect, between sealed and unsealed instruments; that he read, subscribed and placed the instrument in the custody of the person interested in having it accepted, who attached the seal and delivered it to the obligee, and that the latter received and acted upon it in good faith, supposing it to have been executed under seal.

*Gilken* v. *Thumbird* (44 Md. 337); *Taylor* v. *Glaser* (2 S. & R. 502), distinguished.

*Town of Barnet* v. *Abbott* (53 Vt. 120), distinguished and disapproved.

*Met. Life Ins. Co.* v. *McCoy* (41 Hun, 142), reversed.

(Argued December 1, 1890; decided January 14, 1891.)

Appeal from order of the General Term of the Supreme Court in the third judicial department, made June 30, 1886, which granted a motion made in that court pursuant to section 1000 of the Code of Civil Procedure to set aside a verdict directed for the plaintiff and ordered a new trial.

This was an action upon a bond given by defendant's testator, Shibboleth B. McCoy, to plaintiff as surety for George W. Sherman, one of its agents.

On February 25, 1870, the plaintiff appointed George W. Sherman its agent, and thereafter he delivered to it the following bond:

"Know all men by these presents, that we, Robert T. Sherman and S. B. McCoy, of the city of Albany, county of Albany, State of New York, are held and firmly bound unto

Metropolitan Life Insurance Company of New York, in the sum of two thousand dollars, for which payment, well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents.

"Sealed with our seals. Dated this ninth day of March, one thousand eight hundred and seventy.

"The condition of this obligation is such that if George W. Sherman, who has been appointed an agent of the said Metropolitan Life Insurance Company of New York city, shall faithfully conform to all instructions and directions which he, as such agent, may at any time receive from the said Metropolitan Life Insurance Company, and shall on the fifth day of each and every month remit to the office of the said Metropolitan Life Insurance Company all moneys received by him (not previously remitted) as such agent, less his commission, together with his account of the same, then the above obligation to be void, otherwise to remain in full force and virtue.

"ROBERT T. SHERMAN. [L. s.]
"S. B. McCOY. [L. s.]
"Sealed and delivered in presence of
"Witness: I. C. Laass.
"Witness: Geo. B. Fay.
"Witness: Geo. W. Sherman."

George W. Sherman continued to act as agent until September, 1871, when he was found to be indebted to the company in about the sum of $1,600. The agent died February 16, 1880, and March twenty-third of that year this action was begun against his sureties on the bond. Robert T. Sherman pleaded in bar a discharge in bankruptcy and that he did not execute the bond under seal. The action was discontinued as to him, but continued against the respondent, who, on the trial, amended his answer and interposed the plea that he never sealed the bond, and that it had been materially altered by affixing a seal to his signature. The defendant testified that he neither sealed nor authorized anyone to seal the bond, and that he did not sign in the presence of either of the subscribing witnesses, and did not request either to sign, nor did he see

either sign.   The other obligor testified that he executed the
bond after the defendant and in the presence of Laass and Fay,
who at his request signed as witnesses and then he gave it to
George W. Sherman, at which time no seal was affixed to the sig-
nature of either of the sureties.   He further testified: "I do
not know when those seals were put on; my brother George
came in and asked me for a couple of seals and I gave them
to him.   That was after Mr. McCoy had signed it, and it was
after the other witnesses had signed it.   *   *   *   About that
time George came to me and asked after seals and I gave them
to him.   *   *   *   I went to McCoy's laywer, a year and a half
or two years ago, and spoke to him about it, and told him I
recollected the seal and would like to see the bond, as it was a
black seal I had got from an old firm that went out of busi-
ness years ago in Albany, and I gave George some of the seals.
When I came to see the bond those black seals were on."

This evidence was uncontradicted and so was the testimony
of the defendants' agent, that when the bond was given to him
it was sealed and in the same condition as it was at the trial.
A verdict was directed for the plaintiff, neither party asking
to go to the jury, and the exceptions were ordered heard in
the first instance at the General Term.

Further facts are stated in the opinion.

*William H. Arnoux* for appellant.   The rulings at Circuit
and the General Term that the plaintiff had made out a case of
breach of the bond were correct.   (*Thompson* v. *McGregor*,
81 N. Y. 592; *People* v. *White*, 28 Hun, 289; Abb. Tr. Ev.
474; *Hatch* v. *Elkins*, 65 N. Y. 498.)   The bond in suit was
duly sealed.   (*Bradley* v. *Lapham*, 13 Gray, 297; *Wilder.* v.
*Butterfield*, 50 How. Pr. 391; *A. D. Co.* v. *Leavitt*, 54 N. Y.
35, 40; *Ludlow* v. *Simond*, 2 Caines' Cas. 7, 42, 55; *Mackay*
v. *Bloodgood*, 9 Johns. 285; 27 N. Y. 564; *Townsend* v.
*Hubbard*, 4 Hill, 351; *Vanalstyne* v. *Vanslyck*, 10 Barb.
383; 27 N. Y. 564.)   The surety, McCoy, was estopped from
denying that the seal was affixed by him or with his authority;
and that the bond is under seal.   (*Russell* v. *Frear*, 56 N.

Y. 71; *Duer* v. *U. S.*, 16 Wall. 1; *Richardson* v. *Rogers*, 50
How. Pr. 407, 408; *Hurd* v. *Kelly*, 78 N. Y. 588, 598;
*State* v. *Beck*, 52 Me. 884; *Butler* v. *U. S.*, 21 Wall. 272,
275.) There is no legal force in the plea of *laches*. (*People*
v. *White*, 28 Hun, 289.)

*Seymour Van Santvoord* for respondents. There was no
implied authority to affix a seal. (*Kelly* v. *McCormick*, 28
N. Y. 318; *U. S.* v. *Linn*, 15 Pet. 290; *Ledwich* v. *McKinn*,
53 N. Y. 314; *Weyerheyser* v. *Dun*, 100 id. 150; *Taylor* v.
*Glazer*, 2 S. & R. 502; *Bowman* v. *Robb*, 5 Penn. St. 304;
*Chilnon* v. *People*, 66 Ill. 501, 503; *Brooks* v. *Kiser*, 69
Ga. 762; *Warren* v. *Lynch*, 5 Johns. 245; *Town of Solon*
v. *W. Bank*, 114 N. Y. 122.) If the obligation is held to
have been a simple contract, then the addition of a seal by
extending the liability of the maker, and by imposing upon
him an added risk and burden which nothing in the record
shows that he ever contemplated or deemed possible discharged
the maker not authorizing or ratifying it. (*Cronkhite* v.
*Nebeker*, 81 Ind. 323; *Vaughan* v. *Fowler*, 37 Am. Rep.
731; *Greenfield* v. *Howell*, 123 Mass. 196; *Brown* v. *Reed*,
79 Penn. St. 370.) There are no facts that would estop the
sureties from insisting that their liability is to be measured
and determined by the instrument as they made it. (*Barnet*
v. *Abbott*, 53 Vt. 120.) If there was no implied authority
for the affixing of a seal, there is no principle of law to sup-
port the directing of a verdict for plaintiff. (*Russell* v. *Frear*,
56 N. Y. 67; *Hurd* v. *Kelly*, 78 id. 588; 32 id. 445.)

Follett, Ch. J. By signing the bond containing the recital
that it was "sealed with our seals. Dated this ninth day of
March, eighteen hundred and seventy," the defendant asserted
in writing over his own signature in the most solemn manner
that the obligation was what a bond *ex vi termini* imports, a
sealed instrument, and that it was sealed by him. The asser-
tion was undoubtedly untrue, but it was made and put forth
in the way best calculated to deceive, as it did deceive the

obligee. Had the defendant intended in good faith to execute and deliver an unsealed instrument, he should have striken out the words quoted or have taken great care to have it delivered to the obligee as executed by him, but he did neither. He testified : " I signed the bond   *   *   *   at that time I knew the difference between a paper under seal and one not under seal. I would not sign it with a seal, too much force in a seal, extended the time too much, extended my liability too long *   *   *   I presume I read it before I signed it." After the defendant had signed he turned the instrument over to the person for whose benefit it was given and whom he knew to be interested in procuring a bond executed in due form and acceptable to the obligee. Sherman then procured the signature of his brother and obtained from him the seals which he undoubtedly affixed to the signatures of the obligors. The fact that Sherman openly, and evidently in good faith, sealed and delivered it to the company which received it in like good faith is established by uncontradicted evidence. Under these circumstances the defendant should be held to be estopped by the recital and by his conduct from showing that he did not seal or authorize the sealing of the bond.

The recital of a material fact in a bond which is accepted by the obligee and acted on in the belief of the truth of the statement, estops the obligor from showing in an action on the bond that the recital is not true. (*Atlantic Dock Co.* v. *Leavitt*, 54 N. Y. 35 ; *Cady* v. *Eggleston*, 11 Mass. 282–285 ; *Dyer* v. *Rich*, 1 Met. 180; *Washington Co. Ins. Co.* v. *Colton*, 26 Conn. 42; *Trimble* v. *State*, 4 Blackford, 42; Big. Est. [5th ed.] 382.

*Gilkeson* v. *Humbird* (54 Md. 337), and *Taylor* v. *Glaser* (2 S. & R. 502), are types of cases holding that when a penal bond is delivered to and received by the obligee without seals, a recital therein that it is sealed does not make it a specialty or estop the obligor from denying that he is liable as on a sealed instrument, a rule which no one would dispute, but which is not related to the case in hand. *Barnet* v. *Abbott* (53 Vt. 120) is in point, and holds that a recital in a bond that

it is "sealed with our seals" is evidence that it was sealed when delivered, but not proof, and that the obligor may show that he neither sealed, nor authorized it to be sealed. In that case, a person appointed to the office of town treasurer executed as principal with three sureties a bond purporting to be under seal, but the sureties did not affix seals to their signatures, or authorize it to be done. The treasurer, at whose request the bond was executed, affixed seals and delivered the bond to the selectmen, and it was held in an action brought upon the bond against the sureties that they were not estopped from denying that they sealed or authorized the sealing of the bond.

The case last cited seems to be opposed in principle to those previously referred to, and to lay down a dangerous rule. A great variety of bonds are in use in this country, bonds conditioned to secure the payment of money, the performance of contracts, the faithful discharge of duties by trustees and by public officers, which recite that they are executed under seal, and they generally are. It is usually impossible to prove the genuineness of the common-law seal in use in this state, which consists simply of an impression made on a round bit of paper affixed to the instrument by mucilage or by a wafer. There are differences in signatures by which they may be identified and proved, but there are none in seals. Sometimes, though not usually, the execution of bonds is acknowledged, but many are not, and the certificate ordinarily used recites that the person named acknowledged that he executed the instrument, not that he signed, sealed and delivered it, and the acknowledgement is but evidence, not proof, of due execution of the instrument acknowledged. (Code Civil Procedure, §§ 935, 936, 937.)

In an action on a penal bond in which it is recited that it is executed under seal, the obligor is estopped from denying that it was so executed when it appears by his own evidence that he knew the difference in the legal effect between sealed and unsealed instruments; that he read, subscribed and placed it in the custody of the person interested in having it accepted,

when it also appears that that person seals and delivers it to the obligee, who receives and acts on it in good faith. A different rule would open the way for cutting down by oral evidence the duration of obligations from twenty to six years.

The order should be reversed and a judgment ordered on the verdict in favor of plaintiff, with costs.

All concur, except PARKER, J., not sitting.

Order reversed and judgment accordingly.