GEORGE H. BEATTYS, RESPONDENT, *v.* THE TOWN OF SOLON, APPELLANT.

*Railroads — organization of — affidavit relative to payment of ten per cent on the stock — its sufficiency — past-due coupons — interest thereon.*

An affidavit, relative to the organization of a railroad under the general railroad act, complied with the statute and stated that at least $1,000 of stock for every mile of road proposed had been subscribed, and that ten per cent in cash had been paid thereon.

Upon the trial of an action involving the validity of the organization of the railroad some of the subscribers to the stock gave evidence tending to show that they had paid nothing.

*Held*, that the affidavit was sufficient.

That if ten per cent had, in fact, been paid, it was not material that some subscribers had failed to pay any part of it.

Although the coupons of a railroad bond are themselves obligations for the payment of interest, they bear interest after maturity. (HARDIN, P. J., dissenting on this point.)

APPEAL by the defendant, the Town of Solon, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Cortland on the 21st day of May, 1891, after a recovery by the plaintiff of $3,893.39 and costs on a trial at the Cortland Circuit before the court without a jury.

*Bouton & Champlin* and *Louis Marshall,* for the appellant.

*Edward P. Thomas* and *H. D. Newton,* for the respondent.

HARDIN, P. J.:

It is found that "The Utica, Chenango and Cortland Railroad Company * * * was a railroad corporation, duly organized under the general railroad act of this State by the due filing of its articles of association April 9, 1870, and that it thereupon became incorporated for the purpose of constructing a railroad from the town of Cortlandville, through the said town of Solon and the said town of Taylor, in the county of Cortland, in the town of Otselic, in the county of Chenango, in the State of New York."

It is also found : " Its articles of association were filed in the office of the Secretary of State April 9, 1870, and previous thereto one thousand dollars of stock for every mile of railroad proposed to be

made, to wit, thirty-two miles, had been subscribed thereto, and ten per cent paid thereon in good faith; and there was indorsed thereon or annexed thereto an affidavit, made by three of the directors named in said articles, that the said amount of stock as required by law had been in good faith subscribed and ten per cent paid thereon in cash and in good faith."

Upon the trial some of the subscribers for the stock were called as witnesses, who gave evidence tending to show they paid nothing on their subscription; and some of them "that they had an agreement with the individuals soliciting or taking their subscriptions, that they need not pay their ten per cent;" and some of them testified that they had a like agreement that they need not pay anything; but they testified "they knew they were bound by the instrument," and also "that they intended to make good articles;" and they also admitted "that the agreement was a private affair between them and the person soliciting their subscriptions," and that they subscribed, so far as the articles were concerned, in good faith and honestly.

It appeared that the corporation, as such, was not connected with the alleged agreement, and that it had twice made calls for the payment upon the stock. There is no proof that ten per cent on the thirty-two thousand dollars subscription had not actually been paid; on the contrary, it appeared in the affidavit of the three directors attached to the articles, in accordance with the requirements of the act of 1850, that ten per cent had been paid upon the thirty-two thousand dollars. It also appeared in the evidence that the corporation had proceeded to grade its road for several miles, building bridges and culverts, and had expended some $200,000 or more on the same, with a view of completing and operating its road. It is contended by the learned counsel for the appellant that "no valid corporation having been organized the entire issue of bonds was void." We think the position untenable.

If any such agreement was made prior to the subscription or contemporaneous with the act of subscribing to the articles as mentioned by the witnesses to which reference has been made, the same was a fraud upon the law and one that could have no effect and could receive no force. (*Tuckerman* v. *Brown*, 33 N. Y.,

297.) We think the act of 1850, under which the railroad was organized, did not require that each subscriber should pay, before the articles could be deemed efficient, ten per cent upon their subscriptions. (*The Eastern Plank Road Company* v. *Vaughan,* 14 N. Y., 546.)

In *Lake Ontario, Auburn and New York Railroad Company* v. *Mason* (16 N. Y., 451), it was held, viz.: "It is not necessary to the incorporation of a railroad company under the general act, that ten per cent be paid upon the amount of each subscription at the time of making the same, or previous to the filing of the articles of association with the Secretary of State. It is sufficient if the cash payment, by whomsoever made, amount in the aggregate to ten per cent upon one thousand dollars for each mile of road proposed to be · constructed."

In *Farnham* v. *Benedict* (107 N. Y., 159), the subscriptions were less than the amounts required, and no part thereof was paid in cash, and there was not a compliance with the act of 1850 ; the case therefore differs from the one before us.

Here the affidavit of three of the directors attached to the articles of association states : "That at least $1,000 of stock for every mile of railroad proposed to be made by the terms of said articles of association has been in good faith subscribed thereto ; that ten per cent in cash has been paid thereon in good faith, and that it is intended in good faith to construct, maintain and operate the road mentioned in said articles of association."

In *Schenectady and Saratoga Plank Road Company* v. *Thatcher* (11 N. Y., 111), it was held that a similar affidavit for a similar purpose was sufficient, and the objections thereto were overruled.

In *Buffalo and Pittsburgh Railroad Company* v. *Hatch* (20 N. Y., 161), it was held that such an affidavit "is sufficient evidence that at least $1,000 of stock for every mile of road proposed is subscribed and paid." In considering a similar affidavit in that case GROVER, J., stated : "The affidavit in this case proves these facts. Whether the public interest requires further restrictions is a question for the legislature."

It appeared here that by chapter 351, Laws of 1872, the legislature recognized the existence of the Utica, Chenango and Cortland Railroad Company; it is competent for the legislature to recognize

the continued existence of the corporation. (*In re N. Y. Elevated Railroad Company*, 70 N. Y., 327, 336.)

In *Black River and Utica Railroad Company* v. *Barnard* (31 Barb., 260), PRATT, J., observed: "But when the proceedings are regular upon their face, and the company while in the actual exercise of all its corporate functions is recognized by the law-making power of the State as a corporation, it becomes by such recognition *ipso facto* a legal corporation. (9 Wend., 380 ; 3 Comst., 470.) "

Upon the argument of the appeal before us it was insisted, in behalf of the appellant, " the petition presented to the county judge failed to state the jurisdictional fact that the subscribers were a majority of the taxpayers of the town whose names appeared upon its last preceding tax-list or assessment-roll as owning a majority of the taxable property in the corporate limits of the town ;" also, that " the bonds issued by the railroad commissioners exceeding twenty per cent of the entire taxable property within the bounds of the town, as shown by the last preceding tax-list, was unauthorized and void ;" also, that " the bonds having been issued without seals did not conform to the requirements of the bonding act, and were, therefore void ;" also, that " the $24,000 of bonds issued on October 14, 1872, after the entire authorized issue of $44,800 of bonds had been delivered to the railroad company, was without legal authority and void ;" and also, that, " although the statute fixes the term of payment of these bonds at 30 years, the time actually intervening between the date of their issue and the date of payment was twenty-eight years and less, thus violating a material provision of the statute ;" and various considerations and arguments were addressed to us in support of the positions thus taken. We think the questions are not open for further examinations in this court; they are all discussed in the opinion of FOLLETT, J., speaking for this court in the case of the *Town of Solon* v. *Williamsburgh Savings Bank* (35 Hun, 1), and the opinion of BRADLEY, J., delivered in pronouncing an affirmance of our decision, as appears by the report thereof in 114 New York, 122. (See, also, *Metropolitan Life Ins. Co.* v. *Bender*, 124 N. Y., 47.)

It was admitted upon the trial " that the plaintiff is the owner of the coupons set forth   *   *   *   and that he purchased them in good faith and paid the par value thereof in cash without actual notice of

any defect in the bonding of the town or the issue of the bonds." The bonds from which the coupons were cut were put in evidence, and it was conceded that the bonds were made payable to the treasurer of the railroad company or bearer, and that the same had been indorsed by the treasurer in blank. The seventeenth finding of fact is as follows: "That the following is a copy of the coupons or interest warrants annexed to the bonds of plaintiff, except as to number and time of payment, to wit:

" 17.50.

" The Town of Solon will pay to Bearer at the National Park Bank of New York, seventeen, fifty-hundredths dollars on the 1st day of..........., 187. , being six months interest on its bond.

" No........

                           " LYMAN PECK, JR.,
                           " ORRIN RANDALL,
                           " JOHN T. BUTMAN,
                                   " *Commissioners.*"

In the body of the bonds it was stated, viz.: " The interest and principal of this bond are payable at the..........., the interest upon presentation at said bank of the coupons hereto annexed as they respectively become due, and the principal sum upon presentation at said bank of this bond at its maturity. This bond is one of the series of bonds, in all amounting to $44,800, issued by the said town of Solon under and by virtue of a law of the State of New York, entitled an act to authorize the formation of railroad corporations and to regulate the same, passed April 2, 1850, so as to permit municipal corporations to aid in the construction of railroads, passed May 18, 1869." The several bonds were registered in the office of the clerk of Cortland county and had indorsed thereon, viz.:

" Utica, Chenango and Cortland Railroad Company, pay to the order of...........the within bond and coupon attached as they severally become due.

" CORTLANDVILLE, ..........., 187...

(Signed.)    " JAMES S. SQUIRES,

              " *Treasurer of the Utica, Chenango and*
                      *Cortland Railroad Company.*"

And the further indorsement, viz. :

" State of New York.   Town of Solon.   Bond No.. . . . , $500.00. Interest payable March 1st and September 1st, at National Park Bank, in the city of New York.   Registered in Cortland county clerk's office, Book 1, page. . . .       "FRANK PLACE,
                                                                         *Clerk.*"

In the twenty-first finding of fact it is stated that the sum of $2,681 was due upon the coupons held by the plaintiff upon a recovery as sought in this action ; and it is found as a fact, in the twenty-second finding, " That the interest upon said coupons from their several dates of maturity to the 31st day of October, 1889, the date of the trial of this action, is $963.35, to which sum should be added 44 cents for each day's interest from said October 31, 1889, up to the entry of judgment therein."   It was also found, " That none of the aforesaid coupons were signed by the said commissioners, but their names were lithographed upon said coupons."

It was found, as a matter of law, that the plaintiff is entitled to judgment against the defendant for $2,681 of the principal, " with interest thereon from the date of maturity of the several coupons comprising such principal, with interest, amounting to $963.35 on the 31st day of October, 1889, to which sum of $963.35 there should be added $.44 for each day's interest from said October 31, 1889, to said entry of judgment, and for the costs of this action."   The defendant took numerous exceptions to the findings of fact and of law, and to the refusals to find, and among the exceptions is one to the conclusion of law that the plaintiff is entitled to judgment as stated.   From the evidence and the findings of fact it is manifest that the several coupons held by the plaintiff were attached to the bonds for the convenience of the parties in the collection and payment of interest upon the bonds.   The language found in the bonds, read in conjunction with the language found in the coupons, indicates that the coupons represent the several installments of interest accruing upon the bonds and to become due at the periods referred to in the coupons.

In *McClure* v. *Township of Oxford* (94 U. S., 429) it was held : " Where, upon their face, the coupons refer to the bonds to which they were attached, and purport to be for the semi-annual interest

accruing thereon, the purchaser of them is charged with notice of all which the bonds contain." In *City of Lamsen* (9 Wall., 482) it was said : " Besides, the coupons are given simply as a convenient mode of obtaining payment of the interest as it becomes due upon the bonds; there is no extinguishment till payment."`

In *City of Lexington* v. *Butler* (14 Wall., 296) it was said : " As the coupon, if in the usual form, is but a repetition of the contract in respect to the interest for the period of time therein mentioned which the bond makes upon the same subject, being given for interest thereafter to become due upon the bond, which interest is parcel of the bond and partakes of its nature and is not barred by lapse of time, except for the same period as would bar a suit on the bond to which it was attached. Coupons are substantially but copies of the stipulation in the body of the bond in respect to the interest, and are so attached to the bond that they may be cut off by the holder as matter of convenience in collecting the interest, or to enable him to realize the interest due or to become due by negotiating the same to bearer in business transactions without the trouble of presenting the bond every time an installment of interest falls due." Reading the bonds and coupons together, the same force and effect is to be given to the language used as though the parties had provided in the bond that semi-annual payment of interest should be made upon the bond. If the bond had provided that thirty years from their date the principal was to be paid, and the interest was due and payable every six months at the rate of seven per cent, the contract, in effect, would have been the same as the contract between the parties evidenced by the bond and the several coupons. In the case supposed the language would all have been . found in one instrument ; the equivalent language is now found in the bonds and in the respective coupons. (*Bailey* v. *County of Buchanan*, 115 N. Y., 297.) No evidence was produced upon the trial of a new promise to pay interest upon the coupons or the sum represented by them ; nor is there any finding of fact that there was a new promise or agreement to pay interest upon the interest accruing upon the bonds and represented by the coupons. Nor was there any new consideration passed between the lender and the borrower to give force and effect to a new agreement if one had been made since the original loan. It seems, then, the plaintiff is not entitled

to recover interest on the coupons from the date of their maturity, and, so far as the finding and judgment allow interest from the date of the maturity of the several coupons down to the date of the decision, the same was erroneous. (*Stewart* v. *Petree*, 55 N. Y., 621; *Young* v. *Hill*, 67 id., 162.) Such interest so improperly allowed should be eliminated from the judgment. Interest is allowable from the date of the decision, to wit, October 31, 1889, according to the provisions found in section 1235, Code of Civil Procedure.

However, as a majority of the court are of the opinion that interest was allowable, the judgment will, therefore, be affirmed, with costs.

MARTIN, J.:

The only doubt I have as to the correctness of the presiding justice's opinion in this case is as to that portion relating to the interest.

While it must be admitted that the general rule in this State is that compound interest can only be recovered upon some new and independent agreement after simple interest has accrued, and upon sufficient consideration, still, even to this rule, there are some acknowledged exceptions.

In *Connecticut Mutual Life Insurance Company* v. *Cleveland, etc., Railroad Company* (41 Barb., 9), it was held that if interest coupons annexed to a bond issued by a railroad company are not paid when due, interest should be allowed, by way of damages, for non-payment. It is said in Sedgwick on Damages (8th ed., § 345): "Interest is almost universally allowed on the overdue coupons of a coupon bond, though they are obligations for the payment of interest," citing among other cases the following: *Gelpcke* v. *Dubuque* (1 Wall., 175); *Aurora* v. *West* (7 id., 82); *Genoa* v. *Woodruff* (92 U. S., 502); *Koshkonong* v. *Burton* (104 id., 668); *Pana* v. *Bowler* (107 id., 529); *Scotland County* v. *Hill* (132 id., 117); *Rich* v. *Seneca Falls* (19 Blatch., 558); *Fauntleroy* v. *Hannibal* (5 Dill., 219); *Huey* v. *Macon County* (35 F. R., 481); *Harper* v. *Ely* (70 Ill., 581); *Humphreys* v. *Morton* (100 id., 592); *Jeffersonville* v. *Patterson* (26 Ind., 15); *Forstall* v. *Consolidated Association of Louisiana Planters* (34 La. An., 770); *Virginia* v. *Chesapeake and Ohio Canal Company* (32 Md., 501); *Welsh* v. *First Division of St. P. and P. R. R. Co.* (25 Minn., 314);

*McLendon* v. *Anson County* (71 N. C., 38); *Northern Pennsylvania Railway Company* v. *Adams* (54 Pa., 94); *Langston* v. *South Carolina Railway Company* (2 S. Car., 248); *Nashville* v. *First National Bank* (1 Baxter, 402); *San Antonio* v. *Lane* (32 Texas, 405); *Arents* v. *Com.* (18 Gratt., 776); *Gibert* v. *Washington C. V. M. and G. S. R. R. Co.* (33 id., 598); *Mills* v. *Jefferson* (20 Wis., 50). These cases seem to hold that doctrine which is directly opposed to the opinion of the presiding justice in the case before us. I am of the opinion that the judgments in that respect were right and should be affirmed.

MERWIN, J.:

I concur in the opinion of the presiding justice, except on the question of interest. The authorities cited by Justice MARTIN show conclusively that in a case like the present the rule is settled, so far as it can be without a direct decision from the Court of Appeals, that interest is allowable. As said in *Town of Genoa* v. *Woodruff* (92 U. S., 502), it is in entire accordance with the decisions generally of the State courts and of the United States Supreme Court. (See, also, 2 Daniel on Negotiable Inst. [4th ed.], § 1513, and cases cited.) This rule was distinctly laid down by the General Term of the first district in 1863 in *Connecticut Mutual Life Insurance Company* v. *Cleveland, etc., Railroad Company* (41 Barb., 9), and does not seem to have been questioned since in any reported case in this State. In *Young* v. *Hill* (67 N. Y., 162), which is relied on by the counsel for the appellant, the question, as it is here presented, was not involved or considered. In *Bailey* v. *County of Buchanan* (115 N. Y., 301) it is said by Judge EARL : " It is true that past-due coupons, payable to bearer, when detached from the bonds are, for many purposes, independent, separate instruments. They may be negotiated and may be sued upon by the holder without the production of the bonds." If so, it would seem to follow, as a matter of course, that they would draw interest like any other written obligation for the payment of money. The present action is not upon the bonds, but upon the coupons. It is not alleged in the complaint that the plaintiff is the owner of the bonds. It was conceded at the trial that he was the owner of the coupons set forth in the complaint and had purchased them in good faith and for value.

The statute under which the bonds were issued contemplated that the bonds would have attached separate instruments representing the several payments of interest, and I have no doubt the bonds and coupons or interest warrants attached are substantially in the form authorized and contemplated by the statute. The fact that the names of the commissioners, instead of being actually signed to the coupons, "were lithographed upon said coupons" does not make the coupons invalid. The commissioners adopted and delivered as their own the signatures in that form. (*Brown* v. *Butchers and Drovers' Bank*, 6 Hill, 443; *Pennington* v. *Baehr*, 48 Cal., 565; *McKee* v. *Vernon County*, 3 Dill., 210; *Schneider* v. *Norris*, 2 Maule & S., 286; Daniel on Neg. Inst., § 74; 4 Am. and Eng. Encyl. of Law, 431.)

Under the authorities, I think the judgment, as it stands, is correct and should be affirmed.

Judgment affirmed, with costs.

| 64 | 129 |
|----|-----|
| 136a | 375 |