SEYMOUR *v.* SPRING FOREST CEMETERY ASS'N *et al.*

(*Supreme Court, General Term, Fourth Department.* April, 1892.)

1. CEMETERIES—BONDS IN PAYMENT FOR LAND—ULTRA VIRES.

Laws 1847, c. 133, relating to cemetery associations, provides (section 3) that such associations shall have such general powers and privileges, and be subject to the same restrictions, as those contained in Rev. St. pt. 1, c. 18, tit. 3, which, by sec-

tion 1, subd. 4, confers power "to hold, purchase, and convey such real estate as the purposes of the corporation may require," and section 2 provides that the powers enumerated in the preceding section shall vest "in every corporation that shall hereafter be created." *Held,* that bonds given by a cemetery association in payment for lands used as a cemetery, and improvements thereon, were not void, as being *ultra vires.*

2. SAME—POWERS OF OFFICERS—RATIFICATION OF ACTS.

The bonds being signed by one or more of its principal officers, and bearing its corporate seal, and having been recognized at numerous meetings of the trustees as valid, it cannot be objected that they were executed without the authority of the association, or of its trustees or officers.

3. SAME—BREACH OF TRUST BY OFFICERS—LACHES.

A cemetery association having, for 30 years, sold, conveyed, and received the proceeds of said land, and taken no steps to rescind the purchase, it cannot avoid liability on such bonds on the ground that the trustees had promoted their own interests by buying and selling the land; it appearing that when the purchase was made the owners had legal title to the land, and bore no trust duties towards it.

Appeal from judgment on report of referee.

Action by Martha E. Seymour against the Spring Forest Cemetery Association and others. A reference was had by stipulation of the parties, and there was an order settling the form of an interlocutory judgment, from which order and a judgment for plaintiff, defendants appeal, and move for a new trial. Motion denied. Order and judgment modified.

In March, 1890, upon a stipulation, an order was entered referring the issues to Hon. F. R. Gilbert, to hear and determine. November, 1890, Erasmus D. Robinson died, and the parties stipulated that the action proceed without bringing in his representative. April 17, 1891, the referee made his report. On the 13th of June, 1891, at a special term, an order was granted that an interlocutory judgment be entered, and "the form of said decree or judgment be and hereby is settled in the form hereunto annexed, and the same hereby directed to be entered in the clerk's office of Broome county." At the conclusion of the formal parts of the judgment, it was provided, viz.: "That, on the coming in of the report of the referee herein appointed, this court may and shall make such further and other orders, judgment, or decrees as shall be necessary to fully carry out and enforce this judgment." In the interlocutory judgment authorized by the special term it was provided "that Stratton S. Knox, of Cortland, N. Y., be, and hereby is, appointed a referee to take and state the accounts as herein provided; that said defendants account before said referee for all the receipts arising from the sale of lots and the sale of timber, from July 1, 1878, to July 1, 1889, and that said referee proceed with diligence to take such account and report to this court; * * * and said defendants are required to appear before said referee, from time to time, as he may direct, and submit to examination under oath before said referee." And it contained the further language, to wit: "That should it appear on said accounting that any of the moneys received by the defendant corporation, and which should have been paid on said bonds, have been misappropriated by said defendants, then that said plaintiff may have a personal judgment against said defendants, Tracy R. Morgan, Job N. Congdon, Benjamin Devoe, Edward B. Stephens, Alonzo C. Matthews, Harris G. Rodgers, Robert Brown, and Cyrus Strong, for the same, with execution, so that plaintiff shall suffer no loss." The defendants appeal "from the order of the special term * * * on the 30th day of June, 1891, settling the form of the judgment or decree herein, and from each and every part of said order. The said defendants also appeal from the judgment, decree, or interlocutory judgment entered herein in favor of the plaintiff, and against the defendants, in the clerk's office in the county of Broome, on the 30th day of June, 1891; which judgment, among other things, awards the sum of $1,445.83 as costs to the plaintiff herein." A case and exceptions containing all the evidence were settled on the 11th day of January, 1892, by the referee. January 12, 1892, the appellants served a notice of motion to be heard at the February

term of this court "for a rule or order of the court granting a new trial herein, and for such other and further relief as may be just, with costs."

Argued before HARDIN, P. J., and MERWIN, J.

*A. D. Wales* and *G. L. Sessions,* for appellants. *E. K. Clark,* for respondent.

HARDIN, P. J. Plaintiff in her complaint sets out several bonds alleged to have been issued by the corporation defendant, of which she has become the owner, and "entitled to all the moneys and rights secured by said bonds;" and she alleges that no accounting has been rendered to the holders of the bonds of the income and receipts of the Spring Forest Cemetery Association since July 1, 1878, although a demand has often been made therefor in behalf of the owners of the bonds; and she alleges that Erasmus D. Robinson, Tracy R. Morgan, Job N. Congdon, Benjamin Devoe, Edward B. Stephens, Alonzo C. Matthews, Harris G. Rodgers, Robert Brown, and Cyrus Strong "claim to be and are acting as trustees of the said the Spring Forest Cemetery Association; that they have the custody of all the money and property of the said the Spring Forest Cemetery Association; * * * that only a very small portion of the moneys received by the said the Spring Forest Cemetery Association has been paid on said bonds since July 1, 1878; that a large amount of money, but what amount plaintiff is unable to state, further than that it is between five thousand and twenty-five thousand dollars, at the time this complaint is made, has been received by the defendants, which is applicable and should be applied on said bonds; that said defendants neglect and refuse to make any account whatever, refuse to recognize the validity of said bonds, and refuse to make any payment on said bonds, although such account and payment have often been demanded." In the prayer of the complaint she asks for "an accounting by defendants of all the receipts of the said the Spring Forest Cemetery Association since July 1, 1878; that the amount applicable to said bonds may be ascertained, deducting all payments made on said bonds since July 1, 1878, and that plaintiff be paid the net amount applicable on said bonds, with interest on the sums withheld from the time the payments withheld should have been applied; and the plaintiff further demands that defendants Erasmus D. Robinson, Tracy R. Morgan, Job N. Congdon, Benjamin Devoe, Edward B. Stephens, Alonzo C. Matthews, Harris G. Rodgers, Robert Brown, and Cyrus Strong be held personally liable for the payments so withheld, and be adjudged to pay the same; and plaintiff asks for such other and further relief as shall be just." Among other things set up in the answer by way of defense, it is alleged "that said alleged bonds were made and signed without any authority or right of either said association, or of its trustees or officers, to make or issue the same, and contrary to law, and against public policy; that said alleged bonds were not the acts or obligations of said association, and said association was not and is not bound or obligated thereby, and said alleged bonds were unauthorized, illegal, *ultra vires,* and void."

The referee found as conclusions of law, viz.: *First.* That the plaintiff is the owner of $21,000 of the bonds issued by the defendant corporation, and entitled to all moneys, principal and interest, remaining unpaid thereon. *Second.* That the bonds constitute a valid and legal indebtedness in favor of the plaintiff against the corporation defendant, "having been given as the consideration for the title of the lands known as the 'Spring Forest Cemetery,' and the improvements thereon, and the time and money expended." *Third.* That the plaintiff is entitled to an accounting by the defendant of all the receipts from the proceeds of sales of lots since July 1, 1878, and the amounts applicable to the payment of the said bonds ascertained and stated, and that there should be deducted from said sum all payments made on said bonds since July 1, 1878, and that the plaintiff be paid the net sum applica-

ble to the payments of the said bonds, with interest on the same from the time said payments were withheld; "and that there should be an accounting between the plaintiff and the defendants for the purpose of ascertaining and stating the exact amount that remains unpaid on said bonds, namely, the $21,000 principal and interest on the 1st day of July, 1889, the time when this action was commenced." *Fourth.* To a decree stating the balance due, and "directing said proceeds, after deducting all payments on said bonds, to be applied in payment of said bonds, principal and interest, and directing that all such proceeds thereafter received be applied in payment of said bonds by applying upon the Doubleday bonds 50 per cent. of all said receipts, and upon the balance of said bonds 75 per cent. of all said receipts, until the entire balance thereof, principal and interest, is paid according to the terms and provisions of said bonds." *Fifth.* That the plaintiff is not entitled to a judgment against the defendants Erasmus D. Robinson, Tracy R. Morgan, Job N. Congdon, Benjamin Devoe, E. B. Stephens, Alonzo C. Matthews, Harris Rodgers, Robert Brown, and Cyrus Strong "for having misappropriated the funds so received by them, unless upon an accounting it shall appear that they have misappropriated said funds." *Sixth.* That the plaintiff is entitled to a judgment "in accordance with the foregoing findings, with costs, and judgment is hereby directed to be entered thereupon accordingly."

The Spring Forest Cemetery Association was organized under chapter 133 of the Laws of 1847. The existence of the corporation was recognized by the legislature in chapter 323, Laws 1860, and the "acts of the said trustees, secretary, superintendent, and treasurer are hereby declared to be valid, notwithstanding the failure of the association to elect trustees annually, as required by its certificate of incorporation, and the statutes of this state entitled ' Of Rural Cemeteries.'" It is competent for the legislature to recognize the continued existence of a corporation. *In re New York El. R. Co.*, 70 N. Y. 327, and cases cited in manuscript opinion of this court in *Beattys* v. *Town of Solon*, 19 N. Y. Supp. 37, (decided at this court.)· In the third section of the act of 1847, corporations organized under the act were allowed to "have and possess the general powers and privileges, and be subject to the liabilities and restrictions, contained in the third title of the eighteenth chapter of the first part of the Revised Statutes." Subdivision 4, § 1, Rev. St., confers power "to hold, purchase, and convey such real and personal estate as the purposes of the corporation shall require;" and, in the second section of title 3, it is provided: "The powers enumerated in the preceding section shall vest in every corporation that shall hereafter be created, although they may not be specified in its charter, or in the act under which it shall be incorporated." From the provisions of the law to which reference has been had, it is obvious that the corporation defendant had the power to purchase real estate, and that, in pursuance of the power thus given to the corporation, a purchase was made in behalf of the corporation, and a conveyance taken of the property in its improved and bettered condition, on the ——— day of June, 1854, and the corporation had power "to hold" such real estate. Incident to the exercise of the powers conferred was the right, duty, and power to pay for property purchased immediately or at such subsequent time as might be agreed upon between the seller and the purchaser. *Brady* v. *Mayor*, 1 Barb. 591. Appellant calls our attention to *Trust Co.* v. *Helmer*, 77 N. Y. 71, which we think does not aid his contention. In that case the act done was in direct violation of the charter of the corporation, and was in direct conflict with the legal enactments, and it was therefore held that the notes taken in violation of law were void. The bonds in suit were issued in order to furnish the grantors of the property evidence of the indebtedness of the corporation for the property described in the deed received by the corporation; the bonds seem to have been authorized by the corporation; they are all of them executed by an acknowledged officer of the corporation.

In section 3 of the act of 1847 it is provided: "The affairs and property of such associations shall be managed by the trustees, who shall annually appoint from among their number a president and a vice president, and shall also appoint a secretary and a treasurer, who shall hold their places during the pleasure of the board of trustees." The bonds all bore the signature of one or more of the principal officers of the corporation and the seal of the corporation. So far as the evidence discloses, the issuance of the bonds were sanctioned by the trustees and the officers having management of the affairs of the corporation. In addition to what has been said already as to the power of the corporation to purchase lands and create a debt under the statute of 1847, it may be observed that chapter 163 of the Laws of 1860 furnishes a legislative construction to the same effect. In the first section of the act of 1860 it is declared that "it shall be lawful for the trustees of any rural cemetery association, organized under the act * * * of 1847, to fund any outstanding indebtedness for the lands purchased for cemetery purposes, or for moneys actually expended in preserving, improving, and embellishing the cemetery grounds, and to provide for the payment of such funded debt, in the manner hereinafter provided." While the subsequent sections of the act of 1860 provide for certificates giving additional regulation in respect to the mode of securing the indebtedness, we think nothing in the act implies that the power did not exist to secure or evidence the indebtedness by bonds in the manner in which the corporation defendant evidenced its indebtedness. After a careful perusal of the evidence, and consideration of the various circumstances attending the transaction, we are of the opinion that the referee was warranted in concluding that the transaction was free of fraud in fact, and that there was no fraudulent intent on the part of the vendors at the time of the delivery of the deed; nor do we think there was any fraud in receiving the bonds pursuant to the arrangement that was entered into between the corporation and the vendors. After the lapse of the great number of years, it is difficult to ascertain the exact extent of the improvements, embellishments, and betterments, and the expenditures therefor, which had been made upon the property antecedent to the execution and delivery of the deed. In addition to the evidence furnished upon that subject, the lapse of time, coupled by the admissions made by the numerous officers having in charge the affairs of the corporation, with the inferences to be drawn from the long delay and their several acts in the premises, were sufficient to warrant the referee in concluding that the bonds were issued for an adequate consideration received by the corporation in liquidation for its just indebtedness to the obligees. . At the numerous meetings of the trustees, the validity of the bonds, according to the minutes kept of such meetings, seems to have been recognized. Even after there were some uncertainties in the minds of the officers of the corporation as to the amount of any payments that had been made, there seems to have been a uniformity of opinion that the bonds were evidence of an indebtedness of the corporation, and that it was the duty of the corporation to ascertain the amount due on the bonds, and to liquidate it; and we think the referee was warranted in reaching the conclusion that the bonds were not fraudulent in fact, or issued for an illegal consideration, or in violation of any express provision of law. *King* v. *Barnes,* 109 N. Y. 268, 16 N. E. Rep. 382. Nor do we think the referee committed any error in refusing to find that the bonds were "void, as the fruit of a speculation in the burial of the dead." We think the concluding remark in the opinion in *Re Straut,* 126 N. Y. 214, 27 N. E. Rep. 259, where there had been a delay, as here, of over 30 years, is quite appropriate, viz.: "After the lapse of so much time, he cannot well claim that doubtful questions of law or of fact should be resolved in his favor."

2. It is insisted in behalf of the appellants that the referee erred in holding that the bonds constituted evidence of a valid and legal indebtedness against

Sup. Ct.] SEYMOUR *v.* SPRING FOREST CEMETERY ASS'N. 99

the defendant association, and in refusing to find that the bonds were illegal and void, as against public policy, according to several requests made by the defendants; and our attention is called to the general principle that trustees cannot speculate with the corporate property, or deal with it as their own, or use it so as to promote their individual interests in buying or selling trust property. We recognize the force of the rule of equity referred to by the appellants' counsel, and mentioned in the cases of *Barnes* v. *Brown*, 80 N. Y. 535; *Munson* v. *Railroad Co.*, 29 Hun, 79, 103 N. Y. 58, 8 N. E. Rep. 355. We think the appellants are not in a situation to successfully avail of the principles invoked. At the time the arrangement was made for the purchase of the property the owners thereof had the legal, absolute fee, and as such owners they had no trust duties towards the real estate. After the corporation was brought into existence, and they had become its officers and trustees, they were charged with a fiduciary trust towards the corporation, and with trust relations towards its property. The corporation consented to purchase the property of the grantors, and receive from them a deed, and the corporation, acting through the trustees, went into possession of the property conveyed; retained the same; sold, conveyed, and to a very large extent had received the proceeds of sales made by it, and made no effort to rescind the arrangement made between the corporation and the grantors; and the corporation and the trustees in office at the time of the commencement of this action took no steps to rescind the purchase of the lands, to return the improvements, or return the moneys expended to bring about the embellishments, improvements, and addition to the real estate furnished by the grantors prior to the execution of their deed. We think the doctrine of *Munson* v. *Railroad Co.*, 103 N. Y. 58, 8 N. E. Rep. 355, does not apply. As was said in the opinion of *Barr* v. *Railroad Co.*, 125 N. Y. 278, 26 N. E. Rep. 145, "where the contract was executed, and its results retained and enjoyed, long after the opportunity for repudiating it, because of the facts underlying the transaction," the case differs from the *Munson Case* and the others to which reference has been made. The corporation in the case before us had the right to elect or continue, as it did continue, to enjoy the beneficial results derived through the instrumentality of the conveyance made to it. In *Barr* v. *Railroad Co.*, *supra*, it was said that it is "quite incompatible with the principles upon which equity proceeds to hold and use property the only right to which is derived through a contract of lease, and to refuse payment of a part of the rent stipulated in the contract on the ground of the existence of fraud in its procurement. * * * There can be no such fast and loose playing with legal rights." *Duncomb* v. *Railroad Co.*, 84 N. Y. 191. In *Coleman* v. *Railroad Co.*, 38 N. Y. 203, which was an action to recover an alleged indebtedness of $200,000, it was held there could be no recovery, as "the plaintiffs and their successors had not any grant, license, or franchise of any validity or value." The case of *Butts* v. *Wood*, 37 N. Y. 317, was an action to set aside the proceedings of defendants, as directors, in allowing the claim for "extraordinary compensation," and it was said that the claim was illegal and fraudulent; "being a fraud upon the stockholders, the action was properly brought against the three trustees to recover the damage they had caused." These cases differ from the one before us, and are not inconsistent with the doctrine laid down in *Barr* v. *Railroad Co.*, 125 N. Y. 278, 26 N. E. Rep. 145.

3. We think the evidence produced before the referee warranted his conclusion that an account should be stated of the funds in the hands of the corporation remaining applicable to the payment of the indebtedness held by the plaintiff.

4. The extent of the liability, if any, of the defendants, other than the corporation, is, in effect, undetermined by the referee. When the hearing shall be had upon the accounting, the facts in regard thereto will be developed, and a conclusion be reached more intelligible than can be declared upon the present

state of the evidence. We forbear to express any opinion upon that subject. at this stage of the case.

5. Numerous exceptions have been taken to the findings and refusals to-find, many of which are disposed of by the views we have already expressed; others have received attention; and, bearing in mind that this is an equity action, we have not found in any of the exceptions such error as calls for a. disturbance of the conclusion of the referee. *Church* v. *Kidd*, 3 Hun, 254. A point is made that the referee erred in the exercise of his discretion as to the costs of the action. Considering all the aspects of the case as they appear in the appeal book, we are not prepared to say that he abused the discretion,. and therefore do not disturb his conclusion in that regard. Section 1022, Code Civil Proc. In *Church* v. *Kidd*, 3 Hun, 271, a similar question was presented, and the court observed: "In equity actions the granting or withholding of costs rests in the discretion of the trial court;" and the action of the referee was sustained. However, it may be observed, the discretion might have been reserved to the court until after the coming in of the supplemental report. See note to *Hathaway* v. *Russell*, 7 Abb. N. C. 149. We are inclined to sustain the report of the referee as to costs.

(*a*) As regards the appeal from the order settling the judgment to be entered upon the report of the referee, we think the order should be modified so as to provide that the judgment should conform to the language of the referee's report. Those portions of the judgment that transcend the language of the referee's report should be eliminated.

(*b*) The motion made before us for a new trial should be denied. Undoubtedly the referee, to whom the whole issues were referred, might have stated and adjusted more fully the rights of the parties than he has done. However, we are of the opinion that, in accordance with his suggestion, the court had power in settling the interlocutory judgment to be entered upon his report, and to direct a further hearing before the same or another referee. Such practice seems to be sanctioned by *Mundorff* v. *Mundorff*, 1 Hun, 41; *Bank* v. *Morton*, 40 N. Y. Super. Ct. 328; *Burbank* v. *Fay*, 65 N. Y. 65; *Church* v. *Kidd*, 3 Hun, 254; *Hathaway* v. *Russell*, 7 Abb. N. C. 138; *Maicas* v. *Leony*,. (Sup.) 2 N. Y. Supp. 831, affirmed 113 N. Y. 619, 20 N. E. Rep. 586. If the referee had reserved to himself the power to settle the form of the interlocutory judgment, it is reasonable to suppose that the interlocutory judgment would have been made in harmony with his findings of fact and conclusions. of law. Application, however, was made to a special term upon the referee's report for an order settling the form of the interlocutory judgment. Apparently, from the record, as well as from what transpired before us upon the argument, the special term omitted to take up the report and examine it in detail, and compare its language with the language of the proposed interlocutory judgment; but, on the contrary, granted a general order allowing the interlocutory judgment in the language proposed by the plaintiff. Upon an inspection of the interlocutory judgment, it seems to be found it contained some language not warranted by the phraseology found in the referee's report. It would have been orderly to have inserted in the interlocutory judgment the conclusions of law stated by the referee. It should be allowed to stand. Some parts of the decree seem to be in excess of the findings made by the referee. We think such portions of the decree should be stricken therefrom, and the order settling the decree and the decree itself should be modified accordingly.

The foregoing views lead us to the following conclusions: (1) The motion. for a new trial is denied. (2) The order and interlocutory judgment should be modified in the respects stated in the opinion, and as so modified affirmed, with costs of this appeal.

Motion denied. Order settling the interlocutory judgment and the interlocutory judgment modified in accordance with the opinion, and as modified. affirmed, with costs of this appeal.